Deborah Hix **HENDERSON** f/k/a
Deborah Hix, Appellant,

v.

Michael R. **LOVE**, Appellee.

No. 06–05–00048–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 7, 2005.

Decided Nov. 30, 2005.

Paul E. Mansur, Denver City, for appellant.

Michael R. Love, Houston, pro se.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In 1999, Deborah Hix Henderson agreed to purchase from Michael R. Love a house in Avinger, Marion County, Texas, under an executory contract of sale, also known as a contract for deed, which financed the principal sum of $38,500.00. At the time of the contract, neither the contract nor any law required an annual accounting statement by Love. In 2001, changes to Section 5.077 of the Texas Property Code became effective which required Love, beginning in January 2002, to provide Henderson with an annual report, briefing her on certain financial details of the contract and imposing "liquidated damages" of $250.00 per day after January 31 for each year such report was not provided. Apparently, Love failed to provide such a report. In 2004, Henderson sued Love and his co-owner, Sylvia Allison,[1] alleging they were "jointly and severely [sic]" liable for the daily "liquidated damages" because of that failure. The trial court determined that, as applied in this case, the section was unconstitutional. Henderson appeals the resulting summary judgment that she take nothing from Love.

We reverse the summary judgment and remand this case for further proceedings because we hold Section 5.077 of the Texas Property Code is not unconstitutional as properly applied, given that Chapter 41 of the Texas Civil Practice and Remedies Code also applies, conditioning and limiting the potential recovery under Section 5.077. We come to that conclusion in three logical steps:

(1) Section 5.077, standing alone, is at least constitutionally suspect;

---

1. Pleadings allege that Love owns the property with Allison. Allison did not join the contract at issue in this appeal and is not part of this appeal. Henderson's action against Allison is still pending in the trial court, having been severed from Love's summary judgment to allow this appeal.

(2) Chapter 41 applies, conditioning and limiting recovery under Section 5.077; and

(3) The statutory scheme which includes Section 5.077 and Chapter 41 is constitutional.

*(1) Section 5.077, Standing Alone, Is at Least Constitutionally Suspect*

At the time the Love–Henderson contract was signed, Section 5.077 did not apply to it. The statute applied to only those executory contracts of sale involving land in certain economically depressed counties near the Texas–Mexico border. It also provided sanctions for its violation proportionate to the size of a contract's monthly payments and required that advance notice be given a seller before such sanctions could be exacted. The 2001 amendments dramatically changed all of that.

Love contends the application of statutes and the associated penalties, as amended after the contract was in effect, impaired his contract in violation of the Texas Constitution. Because of Section 5.077's retroactivity,[2] the trial court granted Love a summary judgment on the basis that Section 5.077, as applied to this case, violated Article I, Section 16 of the Texas Constitution. That constitutional provision outlaws any "bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts." Tex. Const. art. I, § 16. For the purpose of this discussion, we will briefly examine the prohibition of a statute "impairing the obligation of contracts" and will also touch on Article I, Section 13 of the Texas Constitution prohibiting excessive fines.

*(a) Does Pre–2005 Section 5.077 Impair the Obligation of this Contract?*

As it was before the 2005 changes, Section 5.077 provided, in pertinent part,

(a) The seller shall provide the purchaser with an annual statement[3] in January of each year for the term of the executory contract. If the seller mails the statement to the purchaser, the statement must be postmarked not later than January 31.

. . . .

(c) A seller who fails to comply with Subsection (a) is liable to the purchaser for:

(1) liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement; and

(2) reasonable attorney's fees.

---

2. There is no question in this instance that the Legislature intended for Section 5.077 of the Texas Property Code to be applied retroactively. The enacting language of the 2001 amendments provides,

The changes in law made by the . . . application of Subsections (a) and (b), Section 5.077, Property Code, as amended and redesignated by this Act, . . . apply to an executory contract on or after September 1, 2001, regardless of when the contract was entered into.

Act of May 19, 2001, 77th Leg., R.S., ch. 693, § 3(g), 2001 Tex. Gen. Laws 1328.

3. Subsection (b) details the report's required contents: "the amount paid under the contract[,] . . . the remaining amount owed[, and] . . . the number of payments remaining." If the seller collects taxes or insurance premiums from the buyer, the statement must also include "the amounts paid to taxing authorities on the purchaser's behalf" and "amounts paid to insure the property on the purchaser's behalf." If the seller has received insurance payments because of damage to the property, the statement must account for the insurance proceeds applied to the property. Finally, if the seller has changed insurance coverage, the report must be accompanied with documentation showing the new insurance coverage. Tex. Prop.Code Ann. § 5.077(b). The report's required contents are not at issue here.

TEX. PROP.CODE ANN. § 5.077.[4] Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1326.

The Love–Henderson contract was signed June 16, 1999. The Texas Property Code, as it then existed, required that a seller provide an annual accounting report only when the real property was in a county meeting three criteria: a per capita income averaging twenty-five percent below the state average, an unemployment rate twenty-five percent above the state average, and a location within 200 miles of an international border. TEX. PROP.CODE ANN. § 5.091, Act of May 27, 1995, 74th Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4983–84. Effective September 1, 2001, the Code was amended, deleting the income and border requirements, thereby making Section 5.077 applicable state-wide. Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1319 (also renumbering Section 5.091 as Section 5.062). At the same time, the statutory sanctions were dramatically changed. Before the change, the sanctions were set at fifteen percent of the monthly payments on the contract; afterward, they became "liquidated damages" set at $250.00 per day.

 When the constitutionality of a retroactive statute is challenged, we start with a presumption that a legislative enactment is constitutional. *Barshop v. Medina Co. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex.1996). We presume the Legislature "understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968) (quoting *Tex. Nat'l Guard Armory Bd. v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939)). The wisdom or expediency of a law is for the Legislature to determine, not this Court. *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex.1996); *Smith*, 426 S.W.2d at 831. Further, the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex.1985).

 Any statute that releases a part of the obligation to perform the contractual obligation, or that to any extent amounts to a material change, or modifies it, unconstitutionally impairs the contract under Article I, Section 16 of the Texas Constitution. *Cardenas v. State*, 683 S.W.2d 128, 131 (Tex.App.-San Antonio 1984, no writ). The "obligation of a contract," for purposes of the constitutional prohibition of impairment of contractual obligations, is defined as the law which binds the parties to perform their agreement. *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). The laws in effect at the time a contract is executed are considered part of that contract. *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 490 (1943); *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025 (1934)). "[W]hen a legislative act pertaining to the judicial enforcement of contract rights reaches the point where

---

4. We also note that the 2005 amendments of this section have again altered the penalties—to a maximum of $100.00 total for each annual statement not provided timely. If, however, the seller has conducted two or more such transactions within a twelve-month period, the penalty is $250.00 per day, capped at the fair market value of the property. That amendment does not contain any language that would make it retroactive in nature, and the enacting language likewise does not address its retroactivity. Act of May 26, 2005, 79th Leg., R.S., ch. 978, § 5, 1995 Tex. Gen. Laws 3282.

its effect is to impair the obligation of contracts, it is void." *Slemons,* 174 S.W.2d at 490.

▮▮▮▮ Article I, Section 29 of the Texas Constitution declares that government does not have the general power to impair the rights protected by Article I, Section 16 of the Texas Constitution. *Travelers' Ins. Co. v. Marshall,* 124 Tex. 45, 76 S.W.2d 1007, 1011 (1934). This expressly limits the state's police power. *Id.* The prohibition against impairing the obligation of contracts is "emphatic, unambiguous and without exception; it applies alike to all contracts and protects all obligations of contracts from destruction or impairment by subsequent legislation." *Id.*

Section 5.077 as it existed between September 1, 2001, and September 1, 2005, has been examined in the recently issued *Flores v. Millennium Interests Ltd.,* No. 04–1003, 2005 Tex. LEXIS 733 (Tex. Sept. 30, 2005). *Flores* arose from three certified questions posed to the Texas Supreme Court by the United States Court of Appeals for the Fifth Circuit: (1) whether the statutory liquidated damages were recoverable when a timely accounting statement provided part, but not all, of the information required by Section 5.077(b); (2) whether the purchaser was required to prove actual harm or injury to recover the liquidated damages; and (3) whether Section 5.077's "liquidated damages" fell within the definition of "exemplary damages" in Chapter 41 of the Texas Civil Practice and Remedies Code so a Section 5.077 claimant had to comply with Chapter 41 of the Texas Civil Practice and Remedies Code in order to recover liquidated damages under Section 5.077.

The *Flores* court, in a 6–3 decision, concluded that, when a Section 5.077 annual statement was timely provided, the omission of some required information from the statement did not trigger the liquidated damages of Section 5.077. The court also held that the Section 5.077 liquidated damages constituted a penalty and that Section 5.077 did not require a purchaser to prove any actual damages as a predicate to recovery. Because its answers allowed Flores no recovery, the court decided it was unnecessary to answer the question concerning applicability of Chapter 41 of the Texas Civil Practice and Remedies Code. The issue of Section 5.077's constitutionality was not before the Texas Supreme Court.

As amended in 2001, the language of Section 5.077—considered alone—could support "liquidated damages" in excess of $750,000.00 [5] through August 31, 2005. That figure stands in stark relief to this contract, which originally financed $38,500.00. Section 5.077 could thus exact on this contract a penalty grossly in excess of the value of the entire contract—a penalty of approximately three-quarters of a million dollars on a contract which financed little more than five percent of that potential penalty. Thus, the effect could be not only to consume the entire value of the contract, but also to leave in its place a potential liability in the range of $700,000.00. We conclude that Section 5.077, as applied here, is constitutionally suspect as a possible impairment of the obligation of the Love–Henderson contract.

*(b) Does Section 5.077 Impose an Excessive Fine?*

---

**5.** Our calculation assumes reports due annually January 2002 through January 2005, and accumulates daily liquidated damages of $250.00 beginning February 1 of each such year on each such report.

While not argued to the trial court or to this Court, Article I, Section 13 of the Texas Constitution prohibits the imposition of "excessive fines." A "fine" under Section 13 includes a civil penalty. *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex.1980); *State v. Galveston, Houston, & San Antonio Ry. Co.*, 100 Tex. 153, 97 S.W. 71, 78 (1906), *rev'd on other grounds*, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908). A fine becomes constitutionally excessive only in an extraordinary case in which the fine "becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." *Pennington*, 606 S.W.2d at 690 (quoting *State v. Laredo Ice Co.*, 96 Tex. 461, 73 S.W. 951, 953 (1903)). The wide latitude the state has in imposing fines is exceeded and denies due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Pennington*, 606 S.W.2d at 690 (quoting *St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 66–67, 40 S.Ct. 71, 64 L.Ed. 139 (1919)); *see Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 44–48 (Tex.1998) (due process analysis of punitive damages).

*Pennington* found the pre–1979 treble damages scheme of Section 17.50(b) of the Texas Deceptive Trade Practices Act did not impose a constitutionally excessive fine. In reaching its conclusion, the court recited that the recovery "increased in a fixed proportion to" the actual loss and noted that "the amount of liability bore some relation to the offense." *See Pennington*, 606 S.W.2d at 691. In the case at hand, there is no relation between the so-called "liquidated damages" of Section 5.077 and any actual damages—which are not required under Section 5.077. Also, it is difficult to see any relation between the offense—failing to provide an annual financial report—and the potential liability under Section 5.077 as it was before the 2005 amendments. Section 5.077, as it was, is also constitutionally suspect as potentially imposing an excessive fine.

Thus, we find the 2001–05 version of Section 5.077, standing alone, constitutionally suspect. We need not decide its constitutionality, however, because Section 5.077 does not stand alone.

*(2) Chapter 41 Applies, Conditioning and Limiting Recovery of Section 5.077's "Liquidated Damages"*

On September 1, 1995, when Section 5.077 was first effective, and on September 1, 2001, when it was amended to make it applicable state-wide and to provide the liquidated damages questioned here, Chapter 41 of the Texas Civil Practice and Remedies Code was in existence in much its current form. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 41.001–.013 (Vernon 1997 & Supp.2005). And, by its terms, Chapter 41 applies to a Section 5.077 claim.

Chapter 41 broadly "applies to any action in which a claimant seeks damages relating to a cause of action." Tex. Civ. Prac. & Rem.Code Ann. § 41.002(a). It limits "damages that may be awarded in an action subject to this chapter, *including an action for which damages are awarded under another law of this state*." Tex. Civ. Prac. & Rem.Code Ann. § 41.002(b) (emphasis added). Notably, Chapter 41 expressly declares that it will control in any conflict with any other state law, except four statutes not relevant here. Tex. Civ. Prac. & Rem.Code Ann. § 41.002(c), (d).

More to the point, Chapter 41 also covers exemplary damages, which it defines as "any damages awarded as a penalty." Tex. Civ. Prac. & Rem.Code Ann. § 41.001(5). As has recently been made clear, the "liquidated damages" recovera-

ble under Section 5.077 of the Texas Property Code constitute a penalty. *Flores,* 2005 WL 2397521, at *2–3, 2005 Tex. LEXIS 733, at *7. Thus, the Section 5.077 "liquidated damages" fall squarely within Chapter 41's definition of exemplary damages. *See id.* (Brister, J., dissenting). Therefore, within the plain language of Chapter 41, it applies to Section 5.077 "liquidated damages."

 Even if the plain language of Chapter 41 did not require us to conclude that Chapter 41 limits Section 5.077 recoveries, the generally accepted rules of statutory interpretation would lead us there. A penal statute, such as Section 5.077, should be strictly construed. *Brown v. De La Cruz,* 156 S.W.3d 560 (Tex.2004). We interpret a statute to avoid absurd conclusions or unjust discrimination if the statute is subject to a different, more reasonable interpretation. *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 322 n. 5 (Tex. 1994). "Unless there is no alternative, a statute will not be interpreted so as to lead to a foolish or absurd result." *McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691, 698 (1955).

If possible, we construe statutes to avoid constitutional infirmities. *Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex.2002); *In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 380 (Tex.1998); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 2005). We do this because we presume the Legislature intended compliance with state and federal constitutions. *Brady v. Four-*

*teenth Court of Appeals,* 795 S.W.2d 712, 715 (Tex.1990).

Thus, we hold Chapter 41 applies to Section 5.077 claims.

*(3) The Statutory Scheme Which Includes Section 5.077 and Chapter 41 Is Constitutional*

Chapter 41 provides that, before exemplary damages—which include Section 5.077 "liquidated damages"—may be recovered, more-than-nominal actual damages [6] must be awarded to the claimant.[7] TEX. CIV. PRAC. & REM.CODE ANN. § 41.004(a). Chapter 41 also limits such exemplary damages to no more than the greater of (a) $200,000.00, or (b) any non-economic damages found by a jury not to exceed $750,000.00, plus double the amount of economic damages. TEX. CIV. PRAC. & REM.CODE ANN. § 41.008(b). Those restrictions would dramatically limit the Section 5.077 penalty and impose as a condition precedent that actual damages be proven, thus making Section 5.077 clearly constitutional as it fits within the legislative scheme.

Since Section 5.077, in light of the applicable Chapter 41, is constitutional as applied here, the summary judgment was improper and must be reversed. Since our holding cannot dispose of the case, we remand this case to the trial court for further proceedings consistent with this opinion.

---

6. Because the record contains no proof of any actual damages or that there were no actual damages, we do not know whether, under Chapter 41, exemplary damages might be recoverable once a trial is conducted.

7. We realize *Flores* held that Section 5.077 does not require proof of actual damages. *See Flores,* at *2, 2005 Tex. LEXIS 733, at *6;

*Marker v. Garcia,* No. 04–04–00708–CV, 2005 WL 2860020, *6, 2005 Tex.App. LEXIS 9034, at *18 (Tex.App.-San Antonio Nov. 2, 2005, no pet. h.). But we believe the court was speaking just of Section 5.077 standing alone and not speaking to whether the provisions of Chapter 41 apply. We also note that no constitutionality issue was before the *Flores* court.