# NO. 12-14-00007-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REX SMITH AND NANCY SMITH, APPELLANTS* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *KELLY DAVIS AND AMBER DAVIS, APPELLEES* | § | *VAN ZANDT COUNTY, TEXAS* |

### *OPINION ON REHEARING*

Kelly Davis and Amber Davis filed a motion for rehearing of our February 18, 2015 opinion. We overrule the motion for rehearing, but we withdraw our February 18, 2015 opinion and judgment, and substitute the following opinion and judgment in its place.

Rex Smith and Nancy Smith appeal the trial court's judgment in favor of Kelly Davis and Amber Davis based on Texas Property Code Section 5.077. The Smiths raise fourteen issues on appeal. We affirm in part, reverse and render in part, and reverse and remand in part.

### BACKGROUND

The Smiths own the Tall Oaks Estates Subdivision in Van Zandt County, Texas. In 2003, Rex Smith signed a contract with the Davises to allow them to purchase lot 9 of the subdivision for $43,750.00 with payments to be made over 180 months. In 2004, the Davises executed a vendor's lien note and deed of trust made payable to the Smiths, after which the Smiths executed a warranty deed with vendor's lien conveying lot 9 to the Davises.

In March 2005, lot 7 in the subdivision became available for purchase. After a meeting between Rex Smith and the Davises, they executed another contract in which the Davises agreed to purchase lot 7 for $65,100.00, with payments to be made over a 360 month period. The

payments that the Davises had made to the Smiths for lot 9 were applied to the purchase price for lot 7. Additionally, the Davises reconveyed lot 9 to the Smiths.

As 2007 came to a close, the Davises requested that the Smiths give them a deed to lot 7, as had been done on lot 9. Before sending the Davises the requested deed to lot 7, Rex Smith sent a vendor's lien note and deed of trust to the Davises to sign. In response, the Smiths received the following letter from S. Gary Werley, the attorney for the Davises:

January 15, 2008

Rex Smith and wife, Nancy Smith
P. O. Box 536
Eustace, TX   75214

Re:     *Lots #7 Tall Oaks Estates*
        *Van Zandt County*

Dear Mr. and Mrs. Smith:

I represent Kelly and Amber Davis in reference to the executory contract for Lot #7 of Tall Oaks Estates Subdivision, dated March 22, 2005.

You furnished a Deed of Trust and Promissory Note pursuant to Section 5.081 of the Texas Property Code. The section is only available [sic] to the purchaser, who is not responsible for any costs and requires you to execute and record a warranty deed. Also the note is to be equal to the balance owed under the contract-not the contract total.

I inquired about the balance and was informed that you had not furnished the Annual Accounting Statement required by Section 5.077. Pursuant to Section 5.077(d) you are liable for liquidated damages in the amount of $250.00 a day since January 31, 2006 and $500.00 a day since January 31, 2007 for a total of $273,750.00, limited by the fair market value of the property being $90,000.00.

Please send the sum to me, made payable to Kelly and Amber Davis.

Yours truly,

/s/ S. Gary Werley

S. Gary Werley

When the Smiths did not meet their demands, the Davises filed suit against the Smiths alleging various statutory violations based on the contract to convey lot 7. Eventually, the case was tried to a jury. The jury made findings in favor of the Davises based on statutory fraud in a real estate transaction under Texas Business and Commerce Code Section 27.01, and failure to provide annual statements under Texas Property Code Section 5.077, as well as various other

violations of the Texas Property Code.

Before judgment was rendered, the Davises elected to take the relief found by the jury pertaining to statutory fraud in a real estate transaction. The Smiths appealed to this court, and we reversed the trial court's judgment based on that theory. *See Smith v. Davis*, No. 12-12-00169-CV, 2013 WL 2424266, at*1 (Tex. App.—Tyler June 5, 2013, no pet.) (mem. op.). We also remanded the case to the trial court, so that the Davises could elect another remedy. *Id*. at *7.

On remand, the Davises elected the relief awarded by the jury for the Smiths' failure to provide the annual statements required by Texas Property Code Section 5.077. The trial court rendered a new judgment awarding the Davises $65,100.00 for the Section 5.077 violations. The new judgment also included other alternative remedies in the event the Section 5.077 award was reversed as part of this appeal. Specifically, the trial court alternatively awarded $33,664.41 to the Davises under Texas Property Code Sections 5.069 (failure to provide a survey and disclosures concerning whether the property was within a flood plain), 5.070 (failure to provide tax certificates), and 5.072 (failure to provide notice that the written agreement is the final agreement of the parties, and that oral agreements were prohibited). The trial court also alternatively awarded the Davises $33,664.41 for common law negligent misrepresentation and mutual mistake. Finally, the trial court awarded prejudgment interest and attorney's fees. This appeal followed.

### TEXAS PROPERTY CODE SECTION 5.072 – ENFORCEABILITY OF EXECUTORY CONTRACTS

In their first, fourth, seventh, and tenth issues, the Smiths claim that the executory contract violates Section 5.072 of the Texas Property Code in two respects: (1) the contract required Nancy's signature because the property was Rex and Nancy's joint community property, yet her signature was absent from the agreement; and (2) there were oral agreements between the parties at the time the contract was executed.[1]

---

[1] The Smiths, in their first issue, make this argument with respect to the Davises recovery of "liquidated damages" under Section 5.077 of the Texas Property Code. In regard to their fourth, seventh, and tenth issues respectively, they make this argument with respect to the Davises' remedy of cancellation and rescission as to the Smiths' failure to provide, prior to the execution of the contract: (1) a survey, which was completed within the year prior to the contract's execution, or plat of a current survey of the property as required under Section 5.069, as well as a notice concerning the property's flood plain status; (2) a tax certificate from the collector for each taxing unit that collects taxes due on the property as required under Section 5.070; and (3) the disclosure required under Section 5.072. *See* TEX. PROP. CODE ANN. §§ 5.069(a)(1), (3), (d)(2) (West 2014); 5.070(a)(1), (b)(2) (West 2014); 5.072(d), (e)(2) (West 2014).

3

**Standard of Review and Applicable Law**

An executory contract for the conveyance of real property, also known as a contract for deed, is one method to effectuate a real estate transaction. *See **Flores v. Millennium Interests, Ltd.**,* 185 S.W.3d 427, 429 (Tex. 2005). Unlike a traditional mortgage, an executory contract "allows the seller to retain title to the property until the purchaser has paid for the property in full." *Id.*; *see also **Shook v. Walden**,* 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied) ("A contract for deed differs from a conventional contract for sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain (the 'closing date')"). Said another way, in an executory contract, "legal title to the property does not transfer until after all purchase payments have been made." *Flores,* 185 S.W.3d at 435 (Wainwright, J., concurring).

Executory contracts covering property to be used as a residence must satisfy numerous requirements, and are highly regulated by the legislature. *See* TEX. PROP. CODE ANN. §§ 5.061-.085 (West 2004). Section 5.072, entitled "Oral Agreements Prohibited," states in pertinent part as follows:

> (a) An executory contract is not enforceable unless the contract is in writing and signed by the party to be bound or by that party's authorized representative.
>
> (b) The rights and obligations of the parties to a contract are determined solely from the written contract, and any prior oral agreements between the parties are superseded by and merged into the contract.
>
> (c) An executory contract may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the contract.

TEX. PROP. CODE ANN. § 5.072(a)-(c) (West 2004).

**Discussion**

Based on the clear and unambiguous language of the written contract, this contract is an executory contract, because it allows the seller to retain title to the property until the purchaser has paid for the property in full. *See **Morton v. Nguyen***, 412 S.W.3d 506, 509-10 (Tex. 2013). Specifically, the contract states that "Seller retains title to or liens on the land until all payments hereunder have been paid in full, and NO PART OF THE LAND WILL BE CLEARED OF SUCH SECURITY INTEREST PRIOR TO COMPLETION OF ALL PAYMENTS HEREUNDER."

The Smiths argue that the contract in this case fails to comply with Section 5.072 for two

4

reasons. First, they contend that a portion of the contract is oral because the parties orally agreed to convert the contract to a more traditional real estate transaction after a set time period and that Nancy would sign the necessary documents at a future time. Consequently, their argument continues, the contract is not subject to the restrictions on executory contracts because part of the agreement is oral. Second, they contend that Nancy is not bound by the agreement because neither she nor her authorized representative signed the contract.

The Smiths are correct that Section 5.072 prohibits oral agreements occurring prior to or contemporaneously with the execution of the contract. *See id*. But the statute also states that "[t]he rights and obligations of the parties to a contract are determined solely from the written contract, and any prior oral agreements between the parties are superseded by and merged into the contract." *Id*. Thus, Section 5.072 simply restricts our review of the rights and obligations of the parties to the written contract. *Id*. Here, the Davises presented a written contract executed by Rex. The trial court's judgment in favor of the Davises is against Rex alone, and not Nancy. As such, the relief granted the Davises was based on the written contract, and not based upon any oral agreement involving Nancy.

The Smiths also are correct that to be bound by an executory contract, the party or his authorized representative must have signed the contract. *See id*. However, the Smiths argue that Nancy is not bound by the contract because the contract lacks her signature. The trial court's judgment is not against Nancy. The trial court's judgment is against Rex. The Smiths' argument does not go far enough to establish that the trial court erred. They have provided argument as to why Nancy should not have had a judgment rendered against her, but there is no such judgment. They have failed to provide argument as to how Section 5.072 prohibits a judgment against Rex, a party who did sign the executory contract, and upon whom the trial court's judgment imposes liability to the Davises.

The Smiths' first, fourth, seventh, and tenth issues are overruled

## TEXAS PROPERTY CODE SECTION 5.077 – ANNUAL ACCOUNTING STATEMENT

In their third issue, the Smiths contend that the trial court was required to apply Texas Civil Practice and Remedies Code Chapter 41 in awarding damages under Texas Property Code Section 5.077 but failed to do so. In their second issue, the Smiths contend that the evidence is legally and factually insufficient to support an award of damages under Texas Property Code Section

5.077.   Since these issues are related, we address them together.

**Standard of Review**

The meaning of a statute is a question of law, which we review de novo to ascertain and give effect to the legislature's intent.  ***Entergy Gulf States, Inc. v. Summers***, 282 S.W.3d 433, 437 (Tex. 2009); ***Hong Kong Dev., Inc. v. Nguyen***, 229 S.W.3d 415, 457 (Tex. App.—Houston [1st Dist.] 2007, no pet.).   When construing a statute, we begin with its language.  Our primary objective is to determine the legislature's intent, which, when possible, we discern from the plain meaning of the words chosen.  ***State v. Shumake***, 199 S.W.3d 279, 284 (Tex. 2006).   We presume the legislature intended a just and reasonable result by enacting the statute.  ***City of Rockwall v. Hughes,*** 246 S.W.3d 621, 626 (Tex. 2008).   Where the text is clear, it is determinative of that intent.  ***Entergy Gulf States***, 282 S.W.3d at 437.   When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language.  ***City of Rockwall***, 246 S.W.3d at 626.

**Exemplary Damages Under Chapter 41**

When Chapter 41 applies to a cause of action, it limits the amount of exemplary damages a claimant may recover.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008 (West Supp. 2014).   Texas Civil Practice and Remedies Code Section 41.002 states in pertinent part that

> (a)   This chapter applies to any action in which a claimant seeks damages relating to a cause of action.
>
> (b)   This chapter establishes the maximum damages that may be awarded in an action subject to this chapter, including an action for which damages are awarded under another law of this state.  This chapter does not apply to the extent another law establishes a lower maximum amount of damages for a particular claim.
>
> (c)   Except as provided by Subsections (b) and (d), in an action to which this chapter applies, the provisions of this chapter prevail over all other law to the extent of any conflict.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(a)-(c) (West 2008).

Moreover, when Chapter 41 applies, a claimant seeking exemplary damages ordinarily must prove by clear and convincing evidence that the damages resulted from fraud, malice, or gross negligence.   *See **id.*** § 41.003(a) (West Supp. 2014).   Alternatively, the claimant may recover exemplary damages if a statute establishes a cause of action authorizing exemplary damages under specified circumstances, provided that the claimant proves the required circumstances under the statute by clear and convincing evidence. *See **id.*** § 41.003(c).   Generally

6

speaking, exemplary damages may be awarded under Chapter 41 only if damages other than nominal damages are awarded.   *See id.* § 41.004(a) (West 2008).

**Annual Accounting Statement Under Texas Property Code Section 5.077**

The current version of Section 5.077 states as follows:

§ 5.077.   Annual Accounting Statement

(a)    The seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract.   If the seller mails the statement to the purchaser, the statement must be postmarked not later than January 31.

(b)  The statement must include the following information:
    (1)  The amount paid under the contract;
    (2)  The remaining amount owed under the contract;
    (3)  The number of payments remaining under the contract;
    (4)  The amounts paid to taxing authorities on the purchaser's behalf if collected by the seller;
    (5)  The amounts paid to insure the property on the purchaser's behalf if collected by the seller;
    (6)  If the property has been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and
    (7)  If the seller has changed insurance coverage, a legible copy of the current policy, binder, or other evidence that satisfies the requirements of Section 5.070(a)(2).

(c)  A seller who conducts less than two transactions in a 12-month period under this section who fails to comply with Subsection (a) is liable to the purchaser for:

    (1)  Liquidated damages in the amount of $100 for each annual statement the seller fails to provide to the purchaser within the time required by subsection (a); and
    (2)  Reasonable attorney's fees.

(d)  A seller who conducts two or more transactions in a 12-month period under this section who fails to comply with Subsection(a) is liable to the purchaser for:

    (1)  Liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and

    (2)  Reasonable attorney's fees.

TEX. PROP. CODE ANN. § 5.077 (West Supp. 2014).   The pre-2005 version of Section 5.077 did not include the limitation in (d)(1) that liquidated damages were "not to exceed the fair market value of the property."   *See* Act of June 18, 2005, 79th Leg., R.S., ch. 978, § 5, 2005 Tex. Gen. Laws 3282, 3284.   Thus, the prior version allowed liability without limitation.

In *Flores*, the Texas Supreme Court was presented with three certified questions from the United States Court of Appeals for the Fifth Circuit: (1) whether a seller who provides an annual

statement under Section 5.077 is liable for the statute's "liquidated damages" provision when the statement omits some of the required information; (2) if so, must the purchaser prove actual harm or injury to recover under Section 5.077; and (3) whether "exemplary damages" in Chapter 41 encompass the "liquidated damages" in Section 5.077, requiring compliance with Section 41.003. *See Flores*, 185 S.W.3d at 428. The court concluded that (1) the pre-2005 Section 5.077 is penal in nature; (2) a deficient annual statement representing a good faith effort to provide the statement does not trigger the liquidated damages provision in Section 5.077; and (3) that if the provision is triggered, the legislature "did not intend that a purchaser prove actual damages as a predicate to their recovery." *See id.* at 429, 434. Importantly, however, the court went on to state that "because the incomplete annual statement here did not invoke the liquidated damages provision of Section 5.077(c), we decline to decide at this time whether these statutory damages are also 'exemplary damages' within the meaning of Chapter 41." *Id.*

Later the same year, the Texarkana court of appeals answered the question left open in *Flores*. *Henderson v. Love*, 181 S.W.3d 810, 817 (Tex. App.—Texarkana 2005, no pet.). In *Henderson*, the court observed that the pre-2005 version of Section 5.077, standing alone, was constitutionally suspect as an excessive fine because it contained no limitation on liability. *Id.* at 816. However, the court also concluded that "Section 5.077 does not stand alone" because "by its terms, Chapter 41 applies to a Section 5.077 claim." *See id.* at 817. This included the statute's liquidated damages provision, which "[fell] squarely within Chapter 41's definition of exemplary damages." *See id.* Consequently, the court reasoned, Chapter 41 limits the claimant's recovery under the pre-2005 version of Section 5.077, rendering the statute constitutional. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (West Supp. 2014) (limiting exemplary damages to the greater of (1) twice the amount of economic damages plus an amount equal to noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000).

Unlike *Flores* and *Henderson*, the current version of Section 5.077 applies to this case. However, the language pertinent to our analysis is the same in both versions.

**Actual Damages**

The Smiths argue that Chapter 41 applies to the Davises' claim under the current version of Section 5.077, and that the Davises failed to prove by clear and convincing evidence that they suffered actual damages.

As we have stated, the Texas Supreme Court in *Flores* expressly declined to decide

8

whether Section 5.077's "liquidated damages" are also "exemplary damages" within the meaning of Chapter 41. Nevertheless, Chapter 41, by its own terms, clearly and unambiguously applies to any action in which a claimant seeks damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(a). Moreover, it establishes the maximum exemplary damage award, even when damages are awarded under another law, unless the other law "establishes a lower maximum amount of damages for a particular claim."[2] *Id.* § 41.002(b). Chapter 41 also states that its provisions prevail over conflicting laws. *Id.* § 41.002(c).

Under Chapter 41, "exemplary damages" means "any damages awarded as a penalty or by way of punishment but not for compensatory purposes." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5) (West 2008). And the Texas Supreme Court has concluded that damages awarded under Section 5.077 are penal in nature. *Flores*, 185 S.W.3d at 433.

Chapter 41 requires proof of actual damages as a predicate to exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(a). Section 5.077 does not require proof of actual damages as a predicate to a recovery of liquidated damages. *See* TEX. PROP. CODE ANN. § 5.077. Chapter 41 prevails over all other law to the extent of any conflict. *See id.* § 41.002(c). Such provisions mean what they say and are to be given effect. *See, e.g., **Tex. Lottery Comm'n v. First State Bank of DeQueen***, 325 S.W.3d 628, 639 (Tex. 2010). The legislature expressed its intent that Chapter 41 controls here, and we are not free to disregard the clear and unambiguous language expressed in the statute. *See id.*; *Flores*, 185 S.W.3d at 438-39 (Brister, J., dissenting). In *Flores*, Justice Brister stated in his dissenting opinion that Chapter 41 applies to Section 5.077 by its explicit terms and it prevails over all other conflicting laws. *Flores*, 185 S.W.3d at 438-39 (Brister, J., dissenting). He stated further that such provision "leaves little room for exceptions[, and w]e cannot presume . . . that the drafters of Chapter 41 forgot about statutory fines like the one here; but even if they did, that would not authorize us to edit their draft." *Id.* at 439. Justice Brister's dissent is consistent with the language of Chapter 41 and the principles governing its interpretation. Therefore, we agree with the Smiths that Chapter 41 applies to recovery under Section 5.077.

---

[2] Here, the parties do not dispute that the current version of Section 5.077 is "another law" that "establishes a lower maximum amount of damages" for this "particular claim." TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(b) (West 2008). They also do not dispute that Section 5.077's cap applies here, assuming that Chapter 41 applies generally to their claims. *Compare* TEX. PROP. CODE ANN. § 5.077(d) *with* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b).

We hold that Section 5.077 is subject to Chapter 41, and that a claimant must prove more than nominal damages as a predicate to recovery of liquidated damages under Section 5.077. Because the Davises failed to prove any actual damages from the Smiths' failure to provide the statements, the evidence is insufficient to support the award of Section 5.077 liquidated damages.

The Smiths' second and third issues are sustained.

### TEXAS PROPERTY CODE 5.072 – DISCLOSURE

In their eleventh issue, the Smiths argue that the Davises are not entitled to cancellation and rescission of the contract for lot 7. Alternatively, they argue that in the event the Davises are entitled to the remedy, the trial court erred in rendering judgment on that issue because the Davises failed to present evidence as to the amount of rent they should have paid in restitution to offset the cancellation and rescission remedy.

**Standard of Review and Applicable Law**

The seller of the property must include in the executory contract, or in a separate document prior to the contract's execution, a provision in 14-point boldfaced type or 14-point uppercase typewritten letters that reads substantially similar to the following:

> THIS EXECUTORY CONTRACT REPRESENTS THE FINAL AGREEMENT BETWEEN THE SELLER AND PURCHASER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

TEX. PROP. CODE ANN. § 5.072(d) (West 2014). Moreover, the notice is to be signed and dated by the buyer and the seller. *Id.* If the seller fails to provide the notice, the buyer is entitled to cancel and rescind the executory contract and receive a full refund of all payments made to the seller. *Id.* § 5.072(e)(2). Separately, the failure to provide the notice qualifies as a false, misleading, or deceptive act or practice under the Texas Deceptive Trade Practices Act (DTPA). *See id.* § 5.072(e)(1).

Unlike the punitive nature of the liquidated damages penalty in Section 5.077, the cancellation and rescission remedy is "not intended to be punitive—it merely provides the buyer the option of unwinding the transaction." *Morton v. Nguyen*, 412 S.W.3d 506, 511 (Tex. 2013). Consequently, the cancellation and rescission remedy "contemplates mutual restitution of benefits among the parties[, and the buyer] must restore to the seller supplemental enrichment in the form

of rent for the [buyer's] interim occupation of the property upon cancellation and rescission of the contract for deed." *Id.* at 508. The statutory cancellation and rescission remedy does not contemplate the common law restitution elements of notice and restitution or a tender of restitution by the buyer, "as long as the affirmative relief to the buyer can be reduced by (or made subject to) the buyer's reciprocal obligation of restitution." *Id.* at 511.

The right of offset, setoff, or reimbursement against damages is an affirmative defense that must be pleaded and proved by the party asserting it. *See Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 204 (Tex. App.—Dallas 2014, no pet.) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980)). Generally, an affirmative defense must be pleaded in a responsive pleading, or the defense is waived. *See* TEX. R. CIV. P. 94; *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136–37 (Tex. 2014) (stating Rule 94 makes clear that affirmative defenses must be raised in pretrial pleadings); *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 937 (Tex. 1992) (stating affirmative defense waived if not pleaded). Mutual restitution in this circumstance, akin to the affirmative defense of offset or setoff, is an affirmative defense that must be pleaded. *See Morton*, 412 S.W.3d at 508.

**Discussion**

The jury found in response to special issue number 12 that Rex Smith failed to provide the notice required by Section 5.072 at the time the parties signed the executory contract for lot 7. The Davises testified that they never received that disclosure. When asked at trial whether he provided the disclosure, Rex Smith replied, "Well, of course not." Moreover, our review of the contract and the record shows that Rex did not provide the notice. Therefore, the Davises are entitled to the cancellation and rescission remedy, relief they specifically requested in their petition.[3]

The statute authorizes a "full refund." When the parties exchanged lot 9 for lot 7, Rex applied the amount of principal paid on lot 9, $3,700.00, as a down payment to lower the amount the Davises would finance from Rex on lot 7 (from a $65,100.00 purchase price to a financed amount of $61,400.00). The Davises then made twenty-eight monthly payments on lot 7 in the

---

[3] The cancellation and rescission remedy is available for violations of Sections 5.069, 5.070, and 5.072. *See* TEX. PROP. CODE ANN. §§ 5.069 (d)(2); 5.070(b)(2); 5.072(e)(2). Since we have determined that the Smiths failed to provide the notice required by Section 5.072, we need not address the Smiths' complaints relating to the jury's findings that the Smiths failed to comply with Sections 5.069 and 5.070. *See* TEX. R. APP. P. 47.1.

amount of $565.00 per month.   In total, the Davises paid the Smiths $19,520.00 for lot 7.[4]   Amber Davis testified that these are the correct amounts they paid on lot 7.   And the recitals in the contracts, along with Rex's financial records and the Davises' carbon copies of each payment, confirm these amounts.

The Smiths contend that, under *Morton*, they are entitled to an offset against the refund for the rental value of the property while the Davises occupied the land.   We have noted that the failure to plead and prove an offset waives any entitlement to it.   *Tenet Health Sys.*, 438 S.W.3d at 204 (citing *Brown*, 601 S.W.2d at 936).   The Texas Supreme Court made it clear in *Morton* that the seller pleaded the affirmative defense in question.   *Morton*, 412 S.W.3d at 508 ("Morton asserted various affirmative defenses to the Nguyens' counterclaims and alleged that he was entitled to a setoff in the amount of the fair market rental value of the property for the time the Nguyens occupied the house.").   Moreover, the court noted in *Cruz v. Andrews Restoration Inc.*, the case upon which it based its subsequent holding in *Morton*, that the buyer's right to receive the refund is subject to the seller's right to "plead and prove an offset."   *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 826 (Tex. 2012).

The Smiths failed to plead an affirmative defense or any facts suggesting that they seek a setoff or an offset against the Davises' refund.   Furthermore, the parties did not try this issue by consent.   Rex stated at the trial's conclusion that he had been paying taxes on the property since this dispute began and that he will be unable to sell it until after this dispute is resolved.   But there is no evidence that the parties tried the issue of whether he was entitled to an offset or any evidence establishing the proper amount of an offset.   *See Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (noting trial by consent is reserved for exceptional cases, and we review the record not for admission of relevant evidence on the issue, but rather for evidence of trial of the issue).

In a counterclaim, the Smiths contend that they also seek rescission, but argue that it is impossible to return the parties to the position they maintained prior to the purchase of lot 7.   This is because, their argument continues, rescission would necessitate returning lot 9 to the Davises, and Rex has resold lot 9 to a third party.   But the Davises returned lot 9 to the Smiths as part of

---

[4] Kelly Davis believed that he paid the real estate taxes on lot 7, but was unsure.   There is no evidence in the record as to the amount of taxes paid on lot 7 for the years in question.

this transaction in exchange for lot 7, and Rex applied the amount of principal the Davises had paid on lot 9 ($3,700.00) to lot 7. The Davises do not seek the return of lot 9 and the statutory "full refund" will include the $3,700.00 paid on lot 9 that was applied to lot 7. This satisfies the requirements of the statute.

The Smiths have waived any entitlement to an offset. Therefore, the Davises are entitled to a full refund in the amount of $19,520.00.

The Smiths' eleventh issue is overruled.

### ATTORNEY'S FEES

In their sixth, ninth, and twelfth issues, the Smiths argue that the Davises are not entitled to attorney's fees for violations under Sections 5.069, 5.070, and 5.072, and that the trial court erred in awarding them.

**Applicable Law**

A purchaser recovering liquidated damages under Section 5.077 is entitled to reasonable attorney's fees. *See* TEX. PROP. CODE ANN. § 5.077(d)(2). Sections 5.069, 5.070, and 5.072 do not authorize an award of attorney's fees. *See* TEX. PROP. CODE ANN. §§ 5.069, 5.070, 5.072; *Morton*, 412 S.W.3d at 512. However, violations of those sections support DTPA liability. *See* TEX. PROP. CODE ANN. §§ 5.069(d)(1); 5.070(b)(1); 5.072(e)(1). The DTPA allows a "consumer" who successfully obtains relief under the DTPA to recover costs and reasonable and necessary attorney's fees. TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011).

**Discussion**

We have reversed the trial court's judgment pertaining to liquidated damages under Section 5.077. Without those damages, an award of attorney's fees in improper. *See Morton*, 412 S.W.3d at 512 (holding that without Section 5.077 liquidated damages and finance code claims, no theory authorized a recovery of attorney's fees, including an award of fees for cancellation and rescission under Sections 5.069, 5.070, and 5.072).

The Davises pleaded that the statutory violations were false, misleading, or deceptive acts under the DTPA, and they argue that they are entitled to fees because the DTPA statute applies. However, as in *Morton*, the Davises did not recover under the DTPA. *See id.* at 513 (stating that "[t]he trial court did not find that Morton violated the DTPA," and holding that the purchasers were not entitled to attorney's fees under the DTPA, even though they were entitled to cancellation

13

and rescission under Sections 5.069, 5.070, and 5.072). Therefore, they are not entitled to attorney's fees.

The Smiths' sixth, ninth, and twelfth issues are sustained.

<u>CONCLUSION</u>

We have overruled the Smiths' first, fourth, seventh, and tenth issues relating to the executory contract's enforceability. We have also overruled the Smiths' eleventh issue with respect to their failure to provide the notice required by Section 5.072, along with their contention that they are entitled to an offset against the Davises' remedy of rescission and cancellation of the executory contract. However, we have sustained their second and third issues regarding the Davises' recovery of liquidated damages under Section 5.077. We have also sustained the Smiths' sixth, ninth, and twelfth issues regarding the award of attorney's fees.

Accordingly, we *reverse* the judgment of the trial court awarding the Davises $65,100.00 for the Section 5.077 violations, as well as all awards for attorney's fees, and *render* judgment (1) that the executory contract between Rex Smith and the Davises covering lot 7 is cancelled and rescinded; (2) that the Smiths retain title and recover possession of lot 7; and (3) that Rex Smith pay a full refund to the Davises in the amount of $19,520.00. Because their fifth, eighth, thirteenth, and fourteenth issues pertain to alternative theories of recovery resulting in the same remedy and amount of recovery, we need not address them. *See* TEX. R. APP. P. 47.1. The portion of the trial court's judgment denying the Smiths' counterclaim and awarding prejudgment interest for the Section 5.072 violation is *affirmed*. Because we have determined that the Davises are entitled to a refund in the amount of $19,520.00, we *remand* the case so that the trial court may recalculate prejudgment interest.


**JAMES T. WORTHEN**
Chief Justice

Opinion delivered April 22, 2015.
*Panel consisted of Worthen, C.J. and Hoyle, J.*


(PUBLISH)


14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 22, 2015**

**NO. 12-14-00007-CV**

**REX SMITH,**
Appellant
V.
**KELLY DAVIS AND AMBER DAVIS,**
Appellee

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. 08-00171)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment awarding the Davises $65,100.00 for the Section 5.077 violations, as well as all awards for attorney's fees be **reversed;** judgment is **rendered** (1) that the executory contract between Rex Smith and the Davises covering lot 7 is cancelled and rescinded; (2) that the Smiths retain title and recover possession of lot 7; and (3) that Rex Smith pay a full refund to the Davises in the amount of $19,520.00. The portion of the trial court's judgment denying the Smiths' counterclaim and awarding prejudgment interest for the Section 5.072 violation is **affirmed;** and the cause is **remanded** to the trial court for recalculating prejudgment interest.

It is further ORDERED that the costs of court incurred in both the trial and appellate courts be assessed one-half against the Appellant, **REX SMITH**, and one-half against the Appellees, **KELLY DAVIS AND AMBER DAVIS**; and that this decision be certified to the

court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J. and Hoyle, J.*