## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-51118

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2020

Lyle W. Cayce
Clerk

BRENDA G. MATTHEWS STIDHAM,

Plaintiff - Appellant

v.

OCWEN LOAN SERVICING, L.L.C.; THE BANK OF NEW YORK MELLON,

Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:16-CV-193

_____

Before OWEN, Chief Judge, and KING and STEWART, Circuit Judges.

PER CURIAM:*

Brenda Stidham and her then-husband, Ray Matthews, entered into an executory contract to purchase a house in Odessa, Texas, in 1994. Stidham made her final payment on October 2014, but she did not receive the deed transferring ownership of the house until August 2016. Stidham primarily sought liquidated damages under § 5.079 of the Texas Property Code, which requires sellers to transfer legal title to property covered by an executory

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-51118

contract within thirty days of the purchaser's final payment. The district court granted summary judgment to the defendants, finding that Stidham was not entitled to liquidated damages. We AFFIRM.

## I.

## A.

Stidham and Matthews entered into an executory contract to purchase a house from Nick and Shirley Flaker in 1994. Under the contract, after Stidham and Matthews made 240 monthly payments, the Flakers would be obligated "to convey a General Warranty Deed to the premises." The parties do not dispute that the Flakers later sold their rights, which resulted in the Bank of New York as the owner of the loan and Ocwen Loan Servicing, L.L.C. (Ocwen) as its loan servicer.

Stidham and Matthews moved into the house a few months after the contract was signed, and lived there until they separated, pending divorce, in August 1997. During their separation period, only Matthews lived in the house, and once their divorce was finalized in January 1998, only Stidham lived there. In January 2015, Stidham moved into a nearby property, which she inherited from her father. Stidham claims to have lived in both places until she started renting the house in April 2016. Around this time, Stidham also contemplated selling the house to a prospective buyer, but she never discussed an actual price or received an offer.

In August 2015, Ocwen confirmed to Stidham that the executory contract "was satisfied and paid in full" on October 27, 2014. Ocwen also noted that "there [was] no lien to be released" because Stidham's "mortgage [was] not of record." In response, Stidham requested through her attorney that Ocwen, as "the present title holder," execute a deed conveying her title to the house. She also stated, "If a Special Warranty deed cannot or will not be executed by the

2

No. 17-51118

title holder, Brenda Stidham will have no alternative but to file a trespass to title lawsuit to clear up the title to her realty."

## B.

In May 2016, Stidham filed suit in Texas state court alleging trespass to try title and other torts against the Bank of New York and Ocwen (collectively BONY). BONY removed the suit to federal court and filed a warranty deed conveying the house to Stidham on August 9, 2016. Stidham then filed an amended complaint seeking (1) liquidated damages under Texas Property Code § 5.079 for failing to provide a recorded warranty deed within thirty days after the contract was paid in full and (2) actual damages for the taxes and insurance that she paid on the house between October 27, 2014, (when the contract was paid in full) and August 9, 2016 (when the deed was recorded).

BONY moved for summary judgment, which the district court granted. The district court concluded that Stidham was not eligible for liquidated damages because, among other things, the executory contract that the Flakers recorded in 1997 also operated as a deed. The district court did not expressly evaluate whether Stidham suffered actual damages, or if she did not, whether that precluded her from collecting liquidated damages under § 5.079. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Vuncannon v. United States*, 711 F.3d 536, 538 (5th Cir. 2013). "Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). Although we interpret the facts and draw all reasonable inferences in favor of the nonmoving party, *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013), "[s]ummary judgment is appropriate when the record does not

No. 17-51118

contain evidence that would lead a reasonable jury to find in favor of the non-moving party," *BMG Music v. Martinez*, 74 F.3d 87, 89 (5th Cir. 1996). Moreover, "[t]his Court can affirm the district court's decision based on any legally sufficient ground, even one not relied upon by the district court." *Id.*

## III.

As noted, the district court determined that Stidham was ineligible for liquidated damages under § 5.079(b). In doing so, the district court concluded that BONY did not have title at the time of the alleged violation, that Stidman failed to convert the executory contract into a promissory note and deed of trust as required by the statute, and that she failed to comply with chapter 5 of the Texas Property Code since she did not continually reside at the house. We agree that § 5.079(b) does not permit Stidham to recover liquidated damages, although we do so for different reasons.

BONY argues that Stidman cannot recover liquidated damages because she "provided no evidence demonstrating she suffered actual damages."[1] This argument has two parts. BONY first asserts that chapter 41 of the Texas Civil Practice and Remedies Code (chapter 41) requires plaintiffs like Stidham to first prove that they suffered actual damages before they may recover liquidated damages under § 5.079. Second, BONY contends that Stidham did not suffer any actual damages. Analyzing each part of this argument sequentially, we conclude that BONY is correct.

## A.

Chapter 41 expressly "applies to any action in which a claimant seeks damages," which includes "an action for which damages are awarded under another law of this state." Tex Civ. Prac. & Rem. Code Ann. § 41.002(a)-(b). This chapter also "prevail[s] over all other law to the extent of any conflict."

---

[1] Although BONY argued this point below, the district court did not address it.

No. 17-51118

§ 41.002(c). Importantly, chapter 41 provides that "exemplary damages may be awarded only if damages other than nominal damages are awarded." § 41.004(a). Exemplary damages are "any damages awarded as a penalty or by way of punishment but not for compensatory purposes." § 41.001(5).

BONY contends that liquidated damages arising from § 5.079(b) qualify as "exemplary damages" under chapter 41 because they can be "awarded as a penalty." Accordingly, BONY concludes that "Chapter 41 requires proof of actual damages as a predicate to exemplary damages."

As a preliminary matter, we find this reading persuasive because it is supported by the plain language of chapter 41. After all, liquidated damages can be awarded for punitive purposes, *see, e.g.*, *Comm'r v. Schleier*, 515 U.S. 323, 332 & n.5 (1995), and the liquidated damages at issue here do not clearly serve a compensatory purpose. If these liquidated damages qualify as exemplary damages, then Stidham must show that she is entitled to damages other than nominal damages, i.e., actual damages.

Nonetheless, this is a question of Texas state law, and therefore "we are 'guided by the decisions of state intermediate appellate courts unless other persuasive data indicate[] that the [state's] Supreme Court would decide otherwise.'" *Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016) (alterations in original) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 646 (5th Cir. 2002)). Although neither the Texas Supreme Court nor any intermediate appellate courts appear to have interpreted § 5.079 in the context of chapter 41, Texas intermediate appellate courts have interpreted § 5.077, which "share[s] a similar statutory formula for computing liquidated damages," *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 433 (Tex. 2005). Additionally, the Texas Supreme Court has held that § 5.077 liquidated damages are "penal in nature," *id.*, although it declined to address whether they qualify as exemplary damages under chapter 41, *id.* at 434.

5

No. 17-51118

Two intermediate Texas appellate courts have concluded that liquidated damages arising under § 5.077 qualify as exemplary damages under chapter 41. *See Smith v. Davis,* 462 S.W.3d 604, 613 (Tex. App.—Tyler 2015, pet. denied); *Henderson v. Love*, 181 S.W.3d 810, 817 (Tex. App.—Texarkana 2005, no pet.). Both opinions reasoned that, because § 5.077 liquidated damages are "penal," they therefore satisfy chapter 41's definition of exemplary damages, which includes "any damages awarded as a penalty." *Smith*, 462 S.W.3d at 613 (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5)); *accord Henderson*, 181 S.W.3d at 816-17 (same). Consequently, both courts concluded that purchasers must establish actual damages in order to collect liquidated damages under § 5.077. *Smith*, 462 S.W.3d at 613; *Henderson*, 181 S.W.3d at 816-17.

No intermediate appellate courts have held to the contrary. One court held, without addressing chapter 41, that § 5.077 does not impose an actual-harm requirement, *Marker v. Garcia*, 185 S.W.3d 21, 29 (Tex. App.—San Antonio 2005, no pet.), and commented in dicta in another decision, again without considering chapter 41, that "Section 5.079 does not include a requirement that the buyers be harmed," *Zuniga v. Velasquez*, 274 S.W.3d 770, 775 n.4 (Tex. App.—San Antonio 2008, no pet.).[2]

Because they did not consider chapter 41, neither *Marker* nor *Zuniga* is useful for interpreting whether liquidated damages qualify as exemplary damages. We therefore find that the plain language of chapter 41 and intermediate appellate decisions such as *Smith* and *Henderson* are instructive: plaintiffs seeking liquidated damages under § 5.079(b) must first demonstrate that they suffered actual damages.

---

[2] Tellingly, *Henderson* notes that these cases were "speaking just of Section 5.077 standing alone and not speaking to whether the provisions of Chapter 41 apply." *Henderson*, 181 S.W.3d at 817 n.7 (citations omitted).

6

No. 17-51118

## B.

We now evaluate whether Stidham suffered actual damages. Stidham contends that she did because BONY did not transfer title until August 2016, which allegedly prevented her from selling the house to a specific buyer before that time.[3] Stidham acknowledges that she had not agreed on a price with her prospective buyer, but she argues that, at the very least, if she had been able to sell the house, she would not have been required to pay property tax or property insurance. BONY counters that this does not constitute actual damages because Stidham's tax and insurance benefits ultimately benefitted her own interest in the property.

Under Texas law, "actual damages are either 'direct' or 'consequential.'" *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (citation omitted). Under this framework, "[d]irect damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong," and "[c]onsequential damages, on the other hand, result naturally, but not necessarily, from the defendant's wrongful acts." *Id.* While consequential damages do not need to be "the usual result of the wrong," they "must be foreseeable, and must be directly traceable to the wrongful act and result from it. . . . [I]f damages are too remote, too uncertain, or purely conjectural, they cannot be recovered." *Id.* (citations omitted). Because homeowners usually must pay taxes and insurance on their home, Smith's alleged damages are better categorized as consequential damages rather than direct ones. Stidham must therefore establish that her tax and insurance payments can qualify as consequential damages.

---

[3] Stidham's amended complaint seeks $6,358.39 in "actual damages" for the money that she spent on property taxes and property insurance from October 27, 2014, (the date of her final payment) to August 9, 2016 (the date when BONY recorded the deed).

7

The summary-judgment record reveals that she cannot. In deposition, Stidham claimed that she spoke to someone, "a specific buyer," about selling the house. Nonetheless, Stidham did not specifically identify the buyer, and a price was not discussed. Accordingly, Stidham perhaps lost a *potential* sale, but she did not offer evidence that she lost an actual sale. *Cf. Ramsey v. Davis*, 261 S.W.3d 811, 817 (Tex. App.—Dallas 2008, pet. denied) (noting that damages for slander of title include "the amount of money the seller would have realized if the sale had been consummated"). Because Stidham offers no evidence of why the sale failed to progress, her claimed damages are not "directly traceable to the wrongful act." *See Perry Equip. Corp.*, 945 S.W.2d at 816. Instead, they are "too remote" and "uncertain," *id.*, to qualify as consequential damages.

Since Stidham did not suffer actual damages, which chapter 41 requires, liquidated damages are unavailable under § 5.079(b). Accordingly, we need not address Stidham's arguments that the district court erred by concluding that Stidham had legal title at the time of the alleged breach, that she failed to convert the executory contract as required, and that she failed to comply with chapter 5 of the Texas Property Code.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.