**Affirmed as Modified and Opinion filed October 1, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00484-CV

---

## KBG INVESTMENTS, LLC, Appellant

### V.

## GREENSPOINT PROPERTY OWNERS' ASSOCIATION, INC., Appellee

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2013-20114**

## O P I N I O N

In this action by a property owners' association to enforce a restrictive covenant, the property owner challenges the summary judgment against it and the award of statutory damages for the property owner's violations of the covenant. Although we conclude that the property owner failed to raise a genuine issue of material fact precluding summary judgment, we hold that the statutory damages awarded constitute exemplary damages, which are available only if the claimant

also is awarded more than a nominal amount of other damages for the cause of action. Because the property owners' association was awarded no actual damages, we conclude that the trial court erred in awarding it statutory damages. We therefore modify the trial court's judgment to eliminate the award of statutory damages and affirm the judgment as modified.

## I. BACKGROUND

Appellant KBG Investments, LLC owns a commercial tract in Greenspoint Subdivision, which is subject to a Declaration of Covenants, Conditions and Restrictions ("the Declaration"). Appellee Greenspoint Property Owners' Association, Inc. ("Greenspoint") administers and enforces the provisions of the Declaration. According to Greenspoint's petition, KBG sought and obtained permission from the Architectural Review Committee to paint the exterior of its building a certain color and to post at specified locations two "International Market Place" signs. Rather than acting on this approval, KBG painted its building an unapproved bright yellow color and erected two "Now Open" signs and two "International Flea Market" signs at non-approved locations.

Greenspoint sued for permanent injunctive relief requiring KBG to remedy the violations. In addition, Greenspoint sought declaratory relief that the lien it had placed on KBG's property to secure payment of attorneys' fees, costs, and interest was valid. Finally, Greenspoint sought foreclosure of the lien and an award of statutory damages pursuant to section 202.004(c) of the Texas Property Code. Greenspoint successfully moved for traditional summary judgment on its request for a permanent injunction. The trial court additionally awarded Greenspoint $10,400 in statutory damages, together with attorney's fees, costs, and interest.

In two issues, KBG argues that the trial court erred in granting summary judgment and in awarding statutory damages.

## II. SUMMARY JUDGMENT

A movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). When reviewing a traditional summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

### A. Condition Precedent

KBG first argues that the trial court erred in granting Greenspoint's motion for summary judgment because Greenspoint neither alleged nor proved that all conditions precedent had been performed or had occurred. The record does not support KBG's argument. Greenspoint alleged in its petition that "[a]ll conditions precedent to filing this suit and Plaintiff's right to recovery have been performed or have occurred." A party that makes such a general averment in its pleading is required to prove that allegation only to the extent that it is specifically denied by the opposing party. *See* TEX. R. CIV. P. 54. Because KBG did not specifically deny that any condition precedent had been fulfilled, Greenspoint was not required to prove the contrary.

3

**B.      Affirmative Defenses of Estoppel, Laches, Unclean Hands, and Waiver**

KBG next contends that the summary judgment must be reversed because a review of the entire record in the light most favorable to KBG reveals that there are material issues of fact regarding KBG's affirmative defenses of estoppel, laches, unclean hands, and waiver.  This argument, however, fails to take into consideration KBG's burden in response to the summary-judgment motion.

Any issues that a non-movant contends avoid summary judgment must be expressed in a written response or answer to the motion.  *See Sandhu v. Pinglia Invs. of Tex., L.L.C.*, No. 14-08-00184-CV, 2009 WL 1795032, at *6 (Tex. App.— Houston [14th Dist.] June 25, 2009, pet. denied) (mem. op.).  Such issues include any affirmative defenses that the nonmovant contends are sufficient to defeat summary judgment.  *See Clear Creek Basin Auth.*, 589 S.W.2d at 678 ("[T]he non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement [to summary judgment], such as those set out in rules 93 and 94 . . . ."); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 421–22 (Tex. App.— Houston [14th Dist.] 2007, no pet.) (characterizing the unclean-hands doctrine as an affirmative defense); TEX. R. CIV. P. 94 (identifying estoppel, laches, and waiver as affirmative defenses).  Affirmative defenses that are raised in the non-movant's pleadings but are not expressly asserted in a summary-judgment response or other answer to the motion cannot be considered on appeal as grounds for reversal.  *See* TEX. R. CIV. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

The affirmative defenses of estoppel, laches, and unclean hands are not mentioned in KBG's summary-judgment response.  Thus, we cannot consider these as grounds for reversal.

Waiver is mentioned in KBG's summary-judgment response only in the conclusory sentence, "Only after the Plaintiff had effectively waived all its rights

4

as to the Defendant's actions, did the Plaintiff start making its assertions and demands." KBG did not state the factual basis for its conclusion that Greenspoint had waived all of its rights before ever making an assertion or a demand. KBG neither referred to any law, nor cited any evidence.

Even assuming, without deciding, that this bare assertion was sufficient to raise the issue of whether summary judgment was precluded by the affirmative defense of waiver, KBG still was required to offer summary-judgment proof of each element of the defense. *See Richardson v. Office Bldgs. of Hous.*, 704 S.W.2d 373, 376 (Tex. App.—Houston [14th Dist.] 1985, no writ) (citing *Seale v. Nichols*, 505 S.W.2d 251, 254 (Tex. 1974)). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)). In its response to the summary-judgment motion, KBG mentioned none of these elements.

On appeal, it appears to be KBG's position that Greenspoint's right to object to KBG's paint and signs or to sue for KBG's violation of the restrictive covenant was waived pursuant to Article V, Section 1 of the Declarations That section provides that no additions or improvements shall be erected or placed on the property "until the construction plans and specifications including . . . colors [and] . . . signs . . . have been submitted to and approved in writing by the Architectural Review Committee . . . ." If the Architectural Review Committee "fails to approve or disapprove such plans and specifications within thirty (30) days after the receipt thereof, they shall be deemed to be approved . . . ."

KBG does not dispute Greenspoint's uncontroverted evidence that KBG

sought and obtained approval to paint the building a certain color and to post two "International Market Place" signs in designated locations, and that KBG instead painted the building an unapproved color and erected four unapproved signs at other locations. KBG instead argues that the affidavit of Gurminder Singh, attached to its summary-judgment response, raised a genuine issue of material fact about whether Greenspoint failed to timely respond to a written request for approval of these modifications. KBG contends that by failing to timely respond to the modification request, Greenspoint tacitly approved KBG's current paint and signage choices and waived its right to an injunction requiring KBG to repaint its building and remove its current signs. Specifically, Singh attested that after he was told that the building's color was unacceptable, he met with Greenspoint's Board of Trustees in February 2012. Singh states that he asked the Board to "consider allowing me to maintain the color," and that the Board asked him "to write an explanation letter." Singh says that he also asked "to be allowed to change my signs," and that he "was told then to put it in writing." According to Singh, he sent the letter in March 2012, but the Board "was unresponsive." In addition, Singh stated that after receiving a letter from Greenspoint's attorney in June 2012, he contacted the attorney and asked "that they reconsider their complaint." Singh says, "I was told to send a letter to the attorney and that they would present it. Again, I heard nothing for an extended period of time."

We disagree that Singh's affidavit constitutes evidence sufficient to raise a genuine issue of material fact about whether Greenspoint waived its right to enforce the Declaration by failing to timely respond to a written request made pursuant to Article V, Section 1. Under the terms of that section, Greenspoint's duty to timely approve or disapprove of a property owner's paint and signage choices is triggered by the Architectural Review Committee's "receipt" of the

property owner's "plans and specifications." There is no evidence that Singh's March 2012 letter contained the "plans and specifications" required under Article V, Section 1, or that it was received by the Architectural Review Committee. Although Singh also attested that he was told to send a letter to Greenspoint's attorney sometime in or after June 2012, there is no evidence that he did so.

Because there is legally insufficient evidence that Greenspoint's Architectural Review Committee received "plans and specifications" concerning KBG's current paint and sign choices as required by Article V, Section 1 of the Declaration, there is no evidence that Greenspoint failed to timely approve or disapprove such plans and specifications. We accordingly overrule KBG's first issue.

## III. STATUTORY DAMAGES

Section 202.004(c) of the Texas Property Code provides that "[a] court may assess *civil damages* for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation." TEX. PROP. CODE ANN. § 202.004(c) (West 2014) (emphasis added). Because the statute places such an award within the trial court's discretion, we apply an abuse-of-discretion standard of review. *Sanchez v. Southampton Civic Club, Inc.*, 367 S.W.3d 429, 433 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (corrected op.). "Abuse of discretion," however, "means different things in different contexts." *See Schuring v. Fosters Mill Vill. Cmty. Ass'n*, 396 S.W.3d 73, 76 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Here, KBG argues that the "civil damages" awarded to Greenspoint are "exemplary damages," and that the restrictions found in Chapter 41 of the Texas Civil Practice and Remedies Code on awards of exemplary damages apply. This is a matter of statutory construction, which is a question of law subject to de novo review. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.

7

2002); *see also Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts.").

Both our court and our sister court have concluded that these civil damages are punitive damages. "Damages assessed under section 202.004(c) of the Property Code are unrelated to the type or extent of injury or harm." *Sanchez*, 367 S.W.3d at 436. As such, they are "punitive rather than compensatory." *Id*. (citing *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 937 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

KBG argues that because such damages are "punitive rather than compensatory," *see id.*, they constitute "exemplary damages" under Chapter 41 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5) (West 2015) ("'Exemplary damages' means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. . . . 'Exemplary damages' includes punitive damages."). KBG then argues that because Greenspoint recovered no actual damages, the award of statutory civil damages is precluded. *See id*. § 41.004(a) ("[E]xemplary damages may be awarded only if damages other than nominal damages are awarded.").

In response, Greenspoint points out that our sister court has held that section 202.004(c) does not require proof of actual damages as a prerequisite to the assessment of statutory damages. *See Uptegraph*, 312 S.W.3d at 938 ("[E]vidence of actual damages is not a prerequisite to the assessment of damages under section 202.004(c) . . . ."). But in neither *Uptegraph* nor *Sanchez* did the parties argue that Chapter 41 precludes recovery of these statutory damages in the absence of actual damages. The parties before us have not cited, and our own research has not discovered, any Texas case that has addressed that question.

8

An analogous question was presented—but not answered—in *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427 (Tex. 2005), a case addressing questions certified to the court by the Fifth Circuit Court of Appeals. In *Flores*, the Texas Supreme Court concluded that a "liquidated damages" provision in section 5.077(c) of the Texas Property Code[1] was really a punitive-damages provision, and held that the claimants were not required to "prove actual harm or injury to recover statutory damages," because the court found "nothing *in the statute* to suggest such a requirement." *Id.* at 434 (emphasis added); *see also Henderson v. Love*, 181 S.W.3d 810, 817 n.7 ((Tex. App.—Texarkana 2005, no pet.) (concluding that "the court was speaking just of Section 5.077 standing alone and not speaking to whether the provisions of Chapter 41 apply"). Significantly, however, the court "decline[d] to decide at this time whether these statutory damages are also 'exemplary damages' within the meaning of Chapter 41." *See Flores*, 185 S.W.3d at 434. The court accordingly did not answer the question of whether "a purchaser must also comply with the requirements of Chapter 41 [of the Texas Civil Practice and Remedies Code] to *collect* these statutory damages." *Id.* (emphasis added). Three dissenting justices would have reached that question, and would have concluded that Chapter 41 did apply to the statutory damages at issue in that case. *See id.* (Brister, J., dissenting).[2]

The Fifth Circuit has once again certified a similar issue to the Texas Supreme Court in connection with another statute that provides for a civil penalty

---

[1] Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 1, sec. 5.077, 2001 Tex. Gen. Laws 1319, 1326, *amended by* Act of May 26, 2005, 79th Leg., R.S., ch. 978, § 5, 2005 Tex. Gen. Laws 3280, 3282, *and* Act of May 30, 2015, 84th Leg., R.S., ch. 996, § 6, 2015 Tex. Sess. Law Serv. 3528, 3528–29 (West).

[2] The courts that have addressed that question concluded that the statutory damages at issue in *Flores* constituted exemplary damages to which Chapter 41 applies. *See Smith v. Davis*, 462 S.W.3d 604, 613 (Tex. App.—Tyler 2015, pet. denied) (op. on reh'g); *Henderson*, 181 S.W.3d at 816–17.

without any actual damages: the Texas Optometry Act.[3] The two certified questions are:

1. Whether an action for a "civil penalty" under the Texas Optometry Act is an "action in which a claimant seeks damages relating to a cause of action" within the meaning of Chapter 41 of the Texas Civil Practice and Remedies Code. In other words, are civil penalties awarded under Tex. Occ. Code § 351.605 "damages" as that term is used in Tex. Civ. Prac. & Rem. Code § 41.002(a).

2. If civil penalties awarded under the Texas Optometry Act are "damages" as that term is used in Tex. Civ. Prac. & Rem. Code § 41.002(a), whether they are "exemplary damages" such that Tex. Civ. Prac. & Rem. Code § 41.004(a) precludes their recovery in any case where a plaintiff does not receive damages other than nominal damages.

*Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 283 (5th Cir. 2015). These are similar to the two questions that we must answer in this appeal, but under a different statute. We stress, however, that we are not called upon to construe Chapter 41 in a general sense; we instead determine only the effect of Chapter 41 on section 202.004(c) of the Property Code, which concerns a trial court's discretionary award of specific statutory damages to a private litigant for conduct that is not otherwise unlawful and which, in the case before us, caused no actual damages.[4]

---

[3] TEX. OCC. CODE ANN. §§ 351.001–.608 (West 2012 & Supp. 2014).

[4] We express no opinion on whether the attorney general's claim for civil penalties for certain statutory violations would fall under Chapter 41. *See AEP Tex. N. Co. v. SPA Pipe, Inc.*, No. 03-06-00122-CV, 2008 WL 5210919, at *5 n.8 (Tex. App.—Austin Dec. 12, 2008, pet. dism'd) (mem. op.) ("Although when construing statutes, we are required to read statutes as a whole, we are also limited by the facts as they are presented in an appeal.").

**A.     Does Greenspoint's lawsuit fall under Chapter 41?**

Greenspoint argues that the claims arising from KBG's violation of restrictive covenants are not governed by Chapter 41 because (1) Greenspoint did not seek "damages," as that term is used in the provision identifying Chapter 41's scope; (2) unlike section 202.004, Chapter 41 makes proof of fraud, malice or gross negligence a prerequisite to an award of exemplary damages; (3) section 202.004 provides a lower maximum amount of damages; and (4) if applied to section 202.004, Chapter 41 would nullify such claims for civil damages.  We examine each in turn.

### 1.     *Chapter 41's scope*

Greenspoint argues that statutory damages under section 202.004 fall outside of Chapter 41's scope, because Chapter 41 "applies to any action in which a claimant seeks *damages* relating to a cause of action."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(a) (West 2015) (emphasis added).  According to Greenspoint, this case falls outside Chapter 41 because "actual damages are not sought in claims for breach of restrictive covenants."  Greenspoint did not seek actual damages, but instead sought to enforce a restrictive covenant through the use of a permanent injunction.  Greenspoint also sought "civil damages" under section 202.004(c) of the Property Code.  Greenspoint admits—and we agree—that these statutory "civil damages" are not actual, compensatory damages. *See Sanchez*, 367 S.W.3d at 436.  Thus, Greenspoint's argument that this is not an "action in which a claimant seeks damages relating to a cause of action" rests on the implicit assumption that "damages," as used in section 41.002(a), refers only to actual compensatory damages.

We can test this assumption by examining the legislature's use of the word "damages" within this same provision.  *See City of Lorena v. BMTP Holdings,*

11

*L.P.*, 409 S.W.3d 634, 643 (Tex. 2013) ("We construe statutes to provide consistent meaning to the same word used throughout a statute." (citing *Needham*, 82 S.W.3d at 318)). The legislature used the word "damages" four times in the first three sentences of section 41.002 without specifying whether it was referring to compensatory damages, exemplary damages, or both. Unless the context indicates otherwise, we can presume that in using the same word in each of these instances, the legislature intended the word to be given the same meaning. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." (citing *In re Hall*, 286 S.W.3d 925, 928–29 (Tex. 2009) (orig. proceeding))).

To determine whether the legislature used the word "damages" in the first sentence of section 41.002 to refer only to compensatory damages, let us see how the same word is used in the next two sentences:

> This chapter establishes the maximum *damages* that may be awarded in an action subject to this chapter, including an action for which *damages* are awarded under another law of this state. This chapter does not apply to the extent another law establishes a lower maximum amount of *damages* for a particular claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(b) (emphasis added). If, as Greenspoint contends, "damages" refers exclusively to compensatory damages, then this subsection would mean that Chapter 41 establishes a maximum only for compensatory damages.

We know, however, that "damages" is not used in section 41.002(b) to refer exclusively to compensatory damages, because Chapter 41 in fact sets a maximum amount for exemplary damages. *See id.* § 41.008(b) ("Exemplary damages

awarded against a defendant may not exceed an amount equal to the greater of: (1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000.").[5]  Because the legislature did not use the word "damages" to refer exclusively to compensatory damages in the remainder of section 41.002, we will not read such a restriction into the legislature's use of the same word in the first sentence of this section.  *Cf. TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439 ("If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage.").

### 2. *Chapter 41's requirement of proof of fraud, malice, or gross negligence*

As a further argument that Chapter 41 does not apply to the civil damages awarded here, Greenspoint points out that section 202.004(c) does not require proof of a particular *mens rea* before civil damages may be assessed.  Greenspoint contends that the absence of such a requirement in section 202.004(c) contrasts with section 41.003, which requires clear and convincing evidence of fraud, malice, or gross negligence as a prerequisite to recovery of exemplary damages. But there is no contrast between the two provisions, because the requirement that the claimant prove fraud, malice, or gross negligence does not apply "[i]f the claimant relies on a statute establishing a cause of action and authorizing exemplary damages in specified circumstances or in conjunction with a specified culpable mental state."  TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(c) (West 2015); *see id.* § 41.003(a) (providing that proof of fraud, malice, or gross negligence is required "[e]xcept as provided in Subsection(c)").  The civil damages

---

[5] In fact, until 2003, Chapter 41 did not limit the recovery of any other type of damages. In 2003, section 41.0105 was added, which provides, "In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."  *Id*. § 41.0105 (West 2015).

at issue here fall within that exception. Section 202.004 is a statute that establishes a cause of action. *See* TEX. PROP. CODE ANN. § 202.004(b) ("A property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument."). The statute authorizes a trial court to "assess civil damages" of up to $200 for each day of the violation of a restrictive covenant, which is defined as "any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, prohibitive, permissive, or administrative." *Id.* §§ 202.001(4); 202.004(c). And, as discussed further *infra*, these "civil damages" constitute "exemplary damages." Thus, proof of fraud, malice, or gross negligence is not a prerequisite to the assessment of the damages authorized by section 202.004(c).

### 3. Scope of Chapter 41's exception for claims with lower damage limits

Greenspoint also contends that Chapter 41 does not apply to claims for civil damages under the Property Code because section 202.004(c) "establishes a lower amount of damages that could be awarded to a plaintiff for this particular claim." We need not address the question of whether section 202.004(c) in fact establishes a lower amount of damages, because in any event, Greenspoint is mistaken about the scope of this exception.

It is incorrect to say that the entirety of Chapter 41 is inapplicable if another law establishes a lower amount of damages that could be awarded. The exception instead provides that Chapter 41 "does not apply *to the extent* another law establishes a lower *maximum* amount of damages for a particular claim." TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(b) (emphasis added). This means that Chapter 41 "establishes the maximum exemplary damage award, even when

14

damages are awarded under another law, unless the other law 'establishes a lower maximum amount of damages for a particular claim.'" *Smith v. Davis*, 462 S.W.3d 604, 612–13 (Tex. App.—Tyler 2015, pet. denied). If another law establishes a lower maximum amount of damages for a particular claim, then Chapter 41's maximum-damages provision does not apply. That, however, is "the extent" to which Chapter 41 is rendered inapplicable. With the sole exception of the damages cap, all of Chapter 41's provisions continue to apply—including the requirement that a claimant prove actual damages in more than a nominal amount before exemplary damages may be collected.

### 4. Effect of applying Chapter 41 to section 202.004

Greenspoint additionally argues that, because Chapter 41 precludes an award of penalty damages in the absence of actual damages, we would impermissibly nullify the civil-damages provision of section 202.004(c) if we hold that it is subject to the limitations of Chapter 41. *See* TEX. GOV'T CODE ANN. § 311.023(5) (West 2013) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the . . . consequences of a particular construction . . . .").[6] It is true that even if a party cannot recover actual damages, the party still must secure factual findings on their existence and amount before punitive damages may be awarded. *See Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex. 1985) (stating, in a case in which the plaintiffs were granted injunctive relief, that "[e]ven

---

[6] Although section 41.003 exempts claims for statutory damages from the requirement that the claimant prove fraud, malice, or gross negligence, Chapter 41's requirement that the claimant prove actual damages as a prerequisite to an award of exemplary damages contains no similar exemption for statutory-damage claims. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 *with id.* § 41.004 ("Except [where a claimant . . . elects to have his recovery multiplied under another statute], exemplary damages may be awarded only if damages other than nominal damages are awarded.").

in cases where actual damages are *not recoverable*, it is still necessary to allege, prove and secure jury findings on the existence and amount of actual damage sufficient to support an award of punitive damage"). But Greenspoint's argument is based on the additional assumption that in a suit based on a property owner's violation of a restrictive covenant, the property owners' association could obtain only injunctive relief, and could never prove actual damages.

Contrary to Greenspoint's position, the remedies of actual damages for past harm and injunctive relief to prevent future harm are not necessarily mutually exclusive. *See, e.g.*, *Noell v. City of Carrollton*, 431 S.W.3d 682, 712 (Tex. App.—Dallas 2014, pet. denied) ("[A] court may properly grant injunctive relief to stop a wrong and remedy it, and award past damages to the injured party for the period of time the wrong existed." (citing *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 76–77 (Tex. App.—San Antonio 2011, no pet.))); *Eberts v. Businesspeople Pers. Servs., Inc.*, 620 S.W.2d 861, 864 (Tex. Civ. App.—Dallas 1981, no writ) ("[I]f actual damages are proved, plaintiff may be entitled to damages for a breach that occurred before the suit was filed as well as to an injunction restraining subsequent breaches."), *cited with approval in Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 284–85 (Tex. 2004); *Ivic v. Gorsalitz*, No. C14-88-00204-CV, 1989 WL 70574, at *1 (Tex. App.—Houston [14th Dist.] June 29, 1989, no writ) (not designated for publication) (awarding actual damages for past violation of a restrictive covenant and permanently enjoining future violation); *cf. Schneider Nat'l Carriers*, 147 S.W.3d at 285 (explaining that it "is a rule of general application" that "*future* damages cannot be recovered if a permanent injunction issues to abate them") (emphasis added).

It is not difficult to imagine a situation in which both damages and injunctive relief are available. For example, the Declarations in this case provide that "[n]o

16

use shall be permitted which is offensive by reason of odor . . . or pollution," a situation that is analogous to a trespass to land. The property owner instead is required to maintain the property in a "safe, clean and attractive condition at all times." If the owner does not, then Greenspoint can have such maintenance performed, "and the Owner or lessee shall be liable for the cost thereof."[7] Thus, if a property owner violated these maintenance-and-use provisions and refused to cure them, then Greenspoint could do so, and the reasonable amounts it expended to perform necessary maintenance would be evidence of the existence and amount of its actual compensatory damages. Faced with repeated violations, Greenspoint additionally could seek injunctive relief, such as that available in a trespass action. *Cf. City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App.—Fort Worth 1994, writ dism'd w.o.j.) ("[I]njunction is the proper remedy to restrain repeated or continuing trespasses where the remedy at law is inadequate because of the nature of the injury, or the multiplicity of actions necessary to obtain redress.").

Finally, as the Texas Supreme Court has stated, the "prime canon" of statutory construction is that "we construe statutes by first looking to the statutory language for the Legislature's intent, and only if we cannot discern legislative intent in the language of the statute itself do we resort to canons of construction or other aids." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008)). Where a statute's unambiguous language discloses the legislature's intent that the statute will prevail to the extent that it conflicts with another law, we

---

[7] Even in the absence of such a provision in its declarations, some property owners' associations have a statutory right to reasonably use self-help to enforce restrictive covenants. *See* TEX. PROP. CODE ANN. § 215.009(c) (West 2014) (providing that a master mixed-use property owners' association "may use self-help to enforce its restrictive covenants against a residential or commercial property owner as necessary to prevent immediate harm to a person or property, *or as otherwise reasonable*") (emphasis added).

must give effect to that language. *See id.* Here, the legislature has stated unambiguously that, with certain exceptions inapplicable here, "the provisions of [Chapter 41] prevail over *all* other law to the extent of any conflict." TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(c) (emphasis added).[8] Thus, assuming, without deciding, that Chapter 41 conflicts with section 202.004(c) in that Chapter 41 makes an award of actual damages a prerequisite to an award of exemplary damages while section 202.004 contains no such requirement, then Chapter 41 prevails.

We therefore conclude that Chapter 41 applies.

**B.    Are the civil damages under section 202.004(c) of the Texas Property Code exemplary damages under Chapter 41?**

Chapter 41 defines exemplary damages as "any damages awarded as a penalty or by way of punishment but not for compensatory purposes. . . . 'Exemplary damages' includes punitive damages." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5) (West 2015). Our court already has determined that the civil damages under section 202.004(c) of the Texas Property Code "are punitive rather than compensatory." *Sanchez*, 367 S.W.3d at 436. Under this precedent, civil damages under section 202.004(c) of the Property Code fall squarely within Chapter 41's definition of exemplary damages.

In arguing to the contrary, Greenspoint likens its claim for violation of a restrictive covenant to a claim for breach of contract. According to Greenspoint, it would be nonsensical to treat the statutory civil damages at issue here as exemplary

---

[8] As previously discussed, Chapter 41 does not apply "to the extent another law establishes a lower maximum amount of damages for a particular claim." *Id.* § 41.002(b). It also does not apply to actions under (1) the Texas Free Enterprise and Antitrust Act of 1983; (2) the Deceptive Trade Practices-Consumer Protection Act "except as specifically provided in Section 17.50 of that Act"; (3) Chapter 36 of the Human Resources Code; or (4) Chapter 21 of the Insurance Code. *Id.* § 41.002(d).

damages because exemplary damages are not available for a breach of contract. In other words, Greenspoint argues that it is nonsensical to construe the statute as providing for an award of damages that would not have been available for a common-law breach-of-contract claim. We have rejected that interpretation, concluding instead that "[d]amages assessed under section 202.004 of the Property Code are unrelated to the type or extent of injury or harm caused by the violation." *Sanchez,* 367 S.W.3d at 436. Thus, we already have construed section 202.004 to authorize the assessment of non-compensatory, punitive damages that are not available in a common-law breach-of-contract claim.

Greenspoint also attempts to distinguish civil damages under section 202.004 from exemplary damages under Chapter 41 by pointing out that the civil damages at issue are discretionary. *See* TEX. PROP. CODE ANN. § 202.004(c) ("A court *may* assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation."). Greenspoint states that, "[b]y contrast, provided a plaintiff meets the evidentiary standards under Chapter 41, he should be able to recover exemplary damages." This is incorrect; an award of exemplary damages under Chapter 41 also is discretionary. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.010(b) (West 2015) ("Subject to the [cap on exemplary damages], the determination of whether to award exemplary damages and the amount of exemplary damages to be awarded is within the discretion of the trier of fact.").

Chapter 41 is broad in scope, and with certain limited exceptions that are inapplicable here, its provisions "prevail over all other law to the extent of any conflict." *Id.* § 41.002(c). While the Texas Property Code would allow the recovery of these "civil damages" without any proof of actual damages, Chapter 41 does not, and Chapter 41 prevails. It is undisputed that Greenspoint neither alleged

nor introduced evidence of actual damages.[9]  We therefore conclude that the trial court abused its discretion in awarding Greenspoint statutory damages.  We accordingly sustain KBG's second issue.

## IV. Conclusion

We conclude that Greenspoint carried its burden to establish that KBG violated the restrictive covenant by painting the exterior of its building an unapproved color and by posting unapproved signs.  The burden therefore shifted to KBG to introduce evidence sufficient to raise a genuine issue of material fact precluding summary judgment.  Because KBG failed to meet that burden, we affirm the portion of the judgment granting Greenspoint permanent injunctive relief.

We further conclude that statutory "civil damages" under section 202.004(c) of the Texas Property Code are exemplary damages, and as such, are unavailable where the claimant sustains no other damages.

We accordingly modify the trial court's judgment to eliminate the award of statutory damages, and affirm the judgment as modified.[10]


/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Donovan, and Wise.

---

[9] Greenspoint's attorney's fees are not "damages."  *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013) (orig. proceeding) ("While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been, damages.").

[10] The award of attorney's fees was not challenged on appeal.