**Affirmed and Memorandum Opinion filed February 18, 2021.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-18-00496-CV

### ERIC HOOD A/K/A TIM SACKETT, Appellant

**v.**

### CIT BANK, NA, Appellee

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-12687**

## MEMORANDUM OPINION

This is an appeal from a summary judgment in favor of appellee CIT Bank, N.A., on its breach-of-contract claim against appellant Eric Hood, for his failure to remit insurance proceeds received on behalf of a condominium destroyed by a casualty event, in violation of the deed of trust securing a "reverse mortgage" to the condominium. In this appeal, Hood argues that summary judgment was improper because CIT Bank did not establish its legal authority to bring a breach-of-contract suit against Hood as a matter of law. He also argues that the

deed of trust only authorized in-rem relief, not a monetary judgment, and that the award of attorney's fees was improper because the statutes relied on by CIT Bank either do not apply, or the requirements of the statutes were not satisfied. We overrule Hood's arguments and affirm the judgment of the trial court.

## I. BACKGROUND

In 2006, Rita Sackett refinanced her condominium unit located in Seabrook, Texas through a home-equity conversion mortgage, commonly known as a "reverse mortgage." To complete the transaction, she signed an adjustable-rate note in favor of Financial Freedom Senior Funding Corporation, as the lender. The note was secured by an adjustable-rate home-equity-conversion deed of trust, executed by Sackett, in favor of Financial Freedom, as beneficiary and lender encumbering the condominium as security. Because the condominium was part of a condominium association, Sackett also signed a condominium rider that stated in the event of a distribution of insurance proceeds in lieu of restoration or repair, the proceeds would be assigned and payable to the lender for application against the outstanding debt on the note.

The Federal National Mortgage Association ("Fannie Mae") purchased the note in 2006, though Financial Freedom remained the servicer of the note and holder of record. In 2011, all Financial Freedom's assets—including the servicing rights to the note and deed of trust—were sold to Financial Freedom Acquisition, LLC, a wholly-owned subsidiary of OneWest Bank, FSB.[1] In 2015, OneWest Bank changed its name to CIT Bank, N.A., as part of a merger. Freedom Financial

---

[1] Financial Freedom was a wholly-owned subsidiary of Indymac Bank F.S.B. In 2008, IndyMac Bank was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Company was appointed as receiver. Most of its assets, including those of its subsidiary, were sold to CIT Bank, then known as OneWest Bank, FSB.

transferred the note by indorsing the note in blank on an allonge.[2] CIT Bank is currently in possession of the note and deed of trust, and Fannie Mae is the owner of the note.

The condominium was part of a complex damaged by casualty events in 2008 and 2010, which led to condemnation and destruction of the entire complex. Because those casualty events were covered by insurance maintained by the condominium association, payments were made to all property owners by various insurance policies. Eric Hood is Rita Sackett's son and sole beneficiary. Following the death of his mother, Hood received $39,836.00 in insurance proceeds earmarked specifically for the condominium, and Hood did not remit those proceeds to CIT Bank.

After Sackett's death, CIT Bank attempted to foreclose on the condominium. Hood sought injunctive relief in 2013 to stop the foreclosure sale, and asserted affirmative claims against CIT Bank. CIT Bank answered the lawsuit and brought a counterclaim against Hood for breach of contract arising out of Hood's failure to remit the insurance proceeds in violation of the deed of trust. CIT Bank moved for traditional summary judgment on Hood's affirmative claims, as well as on its breach-of-contract counterclaim against Hood. The trial court granted CIT Bank's summary-judgment motion, awarding damages in the amount of $39,836.00, attorney's fees, as well as pre- and post-judgment interest.[3] Hood does not appeal the take-nothing judgment rendered by the Court on his affirmative claims, and

---

[2] An allonge is a piece of paper attached to an instrument for purposes of indorsement. *See Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 538 (Tex. App.—Houston [14th Dist.] 1997, no writ); *see also* Tex. Bus. & Com. Code Ann. § 3.204(a). Traditionally, an allonge was used when there was no room on the instrument itself, though the UCC now states an allonge is valid even though there is sufficient space on the instrument for an indorsement. *Id.* cmt. 1.

[3] The trial court's judgment states, "This judgment is final, disposes of all parties and all claims and is appealable." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001).

only appeals the portion of the final judgment rendered by the trial court on CIT Bank's breach-of-contract counterclaim.

## II.    ANALYSIS

In his first two appellate issues, Hood challenges the propriety of summary judgment because he argues (1) the trial court erred in rendering summary judgment because a genuine issue of material fact exists as to the ownership of the note and (2) the trial court erred in rendering summary judgment because the power of attorney from Fannie Mae relied on by CIT Bank did not specifically authorize a suit for breach of contract. In his third issue, Hood argues that even if CIT Bank had the standing to enforce the deed of trust, the deed of trust only permits in-rem relief, and not a monetary judgment. Hood's fourth issue asserts that the trial court erred in awarding attorney's fees because the statutes relied upon by CIT Bank either do not apply or the requirements of the statutes were not satisfied.

## A.    Standard of review

We review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant satisfies this initial burden on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude a summary judgment. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

4

**B.     Did CIT Bank have a legal right to enforce the note and deed of trust?**

A party establishes standing to maintain a breach-of-contract action by demonstrating that it has an enforceable interest as a party to the contract, as an assignee of a party, or as a third party beneficiary. *Republic Petroleum LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 430 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see also Harrison v. Reiner*, 607 S.W.3d 450, 460 (Tex. App.—Houston [14th Dist.] 2020, pet. filed) (party with enforceable interest in contract has standing to sue for breach of contract). In its traditional motion for summary judgment, CIT Bank argued that it had standing to pursue its claim against Hood for the insurance proceeds on three alternative grounds as (1) the current holder of the note, (2) the current assignee of record of the deed of trust, or (3) as mortgage servicer for the note and deed of trust.[4] In his first two issues, Hood attempts to raise a fact issue on all three of these grounds. Hood lodges several arguments attacking CIT Bank's standing as the current holder and assignee of record. He argues the trial court erred in granting CIT Bank's summary-judgment motion because a genuine issue of material fact exists as to whether CIT Bank or Fannie Mae owns the note. He also claims that CIT Bank cannot establish its status as holder because the allonge on which it relies was undated and there was no evidence in the record confirming the allonge was attached to the note. Finally, Hood cites to this court's precedent arguing that the use of an allonge generally creates a fact issue as to whether the allonge was properly attached, rendering summary judgment improper.

While Hood's first argument raises a fact question on the ownership of the

---

[4] CIT Bank argues that it possessed "the capacity to sue to enforce the lender's rights and remedies under the Deed of Trust." However, CIT Bank conflates capacity and standing in its arguments. Hood never challenged capacity below, which is a plea that must be verified. Tex. R. Civ. P. 93. We read CIT Bank's arguments as defending their standing to enforce the lender's rights and remedies.

note, this argument is premised on the false notion that establishing a fact issue on the ownership of the note would defeat summary judgment. *Clear Creek Basin Auth*., 589 S.W.2d at 678 (movant must establish entitlement to summary judgment on issues expressly presented to trial court by conclusively proving all essential elements of cause of action as matter of law). CIT Bank was not required to prove ownership of the note in order demonstrate its standing, nor was ownership of the note an element of CIT Bank's cause of action. However, the underlying legal issue raised by Hood is that CIT Bank failed to establish standing to maintain a breach-of-contract action against him for violating the deed of trust. Hood argues there is conflicting summary-judgment evidence as to the ownership of the note that calls into question CIT Bank's status as the current holder and assignee of record. To the extent that Hood's first issue challenges CIT Bank's standing, we review the court's final summary judgment to determine whether CIT Bank established standing as a matter of law. Tex. R. App. P. 38.9.

### 1. CIT Bank established it was the holder of the note

The summary-judgment evidence offered by CIT Bank established that Fannie Mae purchased the note in 2006. CIT Bank also offered summary-judgment evidence that the note had been in its possession since July 2011. The note, as well as its corresponding allonge, were part of the summary-judgment evidence. It is undisputed the allonge was indorsed in blank by Freedom Financial.

Hood argued below and to this court that because Fannie Mae purchased the note in 2006, Freedom Financial could not have validly assigned the deed of trust in 2009 and that conveyance failed to transfer an enforceable interest in the deed of trust.[5] Relying on a single federal district court applying Texas law, Hood argues

---

[5] CIT Bank supported its summary-judgment motion with the following chain of title for the deed of trust: (1) Freedom Financial assigned the deed of trust in 2009 to Mortgage

that by asserting possession of the note CIT Bank was also asserting ownership of the note. *See Calderon v. Bank of America N.A.*, 941 F. Supp. 2d 753, 765 (W.D. Tex. 2013). And because he argues CIT Bank effectively asserted ownership of the note, there is a fact issue as to the ownership of the note and ultimately the assignments of the deed of trust. Hood's argument and reliance on *Calderon* are misplaced. Not only is the opinion in *Calderon* not binding precedent on this court, but the district court misreads the Business and Commerce Code as to this legal proposition. *Id*. (citing Tex. Bus. & Com. Code Ann. § 3.205(b)). We decline to the adopt the district court's interpretation in *Calderon*, and turn directly to the Uniform Commercial Code ("UCC"), codified in Texas in the Business and Commerce Code, which governs negotiable instruments such as the note here. *See generally* Tex. Bus. & Com. Code Ann. §§ 3.101–3.605 (Negotiable Instruments).

A holder of an instrument has the right to enforce the instrument. *Id*. § 3.301. A holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id*. § 1.201(21). A person can become the holder of an instrument when the instrument is issued to that person; or he can become a holder by negotiation. *Id*. § 3.201, cmt. 1. Negotiation is the "transfer of possession of an instrument . . . by a person other than the issuer to a person who thereby becomes its holder." *Id*. § 3.201(a). However, a person may be entitled to enforce the instrument even though the person is not the owner of the instrument. *Id*. § 3.301.

---

Electronic Registration Systems, Inc. ("MERS"); (2) MERS then assigned the note and deed of trust in 2010 to Financial Freedom Acquisition, LLC; and then (3) Financial Freedom Acquisition, LLC assigned the deed of trust in 2011 to OneWest Bank, FSB. CIT Bank relied upon the affidavit of Gail Balettie, senior vice president of servicing operations, to establish that OneWest Bank, FSB changed its name to CIT Bank. Therefore, CIT Bank established that it was the current assignee of the Deed of Trust, and therefore had an enforceable interest in the Deed of Trust. *See Republic Petroleum LLC*, 474 S.W.3d at 430.

The UCC recognizes that although transfer of an instrument might mean in a particular case that title to the instrument passes to the transferee, that result does not follow in all cases. *Id*. § 3.203 cmt. 1 ("The right to enforce an instrument and ownership of the instrument are two different concepts.").[6] In fact, as applicable here, comments to the UCC describe a situation in which a person or entity with ownership rights might not be entitled to enforce the instrument. *Id*. ("For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument."). The fact that CIT Bank is asserting status as a holder does not require that CIT Bank must be the owner. Nor does the fact that CIT Bank has identified another entity as the owner of the note prevent the conclusion that CIT Bank is the holder of the note.

Here, Freedom Financial transferred its possession of the note by indorsing the note in blank. An instrument is indorsed in blank if it does not identify a person to whom the indorsement makes the instrument payable. Tex. Bus. & Com. Code Ann. § 3.205(a). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." *Id*. § 3.205(b). A blank indorsement may be composed of just a signature. *Id*. § 3.205(c) cmt. 2 ("A blank indorsement is usually the signature of the indorser on the back of the instrument without other words."). By producing a note indorsed in blank, CIT Bank was not required to show how the note was transferred. *See id*. § 3.205(b); *EverBank, N.A. v. Seedergy Ventures, Inc*., 499

---

[6] Ownership rights in instruments may be determined by principles of the law of property. Tex. Bus. & Com. Code Ann. § 3.203 cmt. 1.

S.W.3d 534, 541 (Tex. App.—Houston [14th Dist.] 2016, no pet.). CIT Bank's possession of the note, indorsed in blank on the allonge to the note, established conclusively that it was the holder of the instrument, and entitled to enforce the note. *See* Tex. Bus. & Com. Code Ann. § 3.205(a), (b).

The summary-judgment record reveals no fact issue on the ownership of the note. CIT Bank produced summary-judgment evidence establishing its status as holder of the note and assignee of record of the deed of trust, and Hood did not offer any controverting evidence.

### 2. The allonge does not create a fact issue as to CIT Bank's status as holder

Hood next argues the blank indorsement is on an allonge, and because the allonge is undated it creates a fact question as to the timing of the execution of the indorsement.[7] However, the lack of date on the indorsement is immaterial. Texas law does not require that the indorsement on the allonge have a date, nor does Hood cite to any authority requiring a date. *See Seedergy Ventures*, 499 S.W.3d at 543. And, as discussed above, the UCC provides that CIT Bank's possession of the note indorsed in blank is sufficient to establish CIT Bank's status as holder. *See* Tex. Bus. & Com. Code Ann. §§ 3.205(b), (c).

Hood's second attack on the allonge is that Gail Balettie's affidavit does not explain how the allonge was attached to the note. Relying on *Estrada v. River Oaks Bank & Trust Co.*, decided by this court in 1979, Hood argues the use of an allonge generally creates a fact issue. 550 S.W.2d 719, 728 (Tex. App.—Houston

---

[7] Hood makes this argument for the first time on appeal. However, summary judgments must stand on their own merits, and the nonmovant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court are insufficient as a matter of law to support summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Because Hood's challenge to the allonge, relied upon by CIT Bank in its motion for summary judgment, is one of legal sufficiency, we address his arguments.

[14th Dist.] 1977, writ ref'd n.r.e.). At the time *Estrada* was decided, the UCC required an allonge to be "so firmly affixed" to the instrument "as to become a part thereof." *Id*. This court in *Estrada* interpreted changes to UCC language as evidence of an intent to restrict, rather than expand the use of allonges. *Id.* However, the supreme court did not adopt this court's holding in *Estrada* that the manner of attachment of an allonge is always a fact issue in a case addressing a challenge to the attachment of an allonge. *Sw. Resolution Corp. v. Watson*, 964 S.W.2d 262, 264 (Tex. 1997). Rather, the supreme court held that stapling an allonge to a note satisfied the "so firmly affixed thereto as to become a part thereof" requirement, determining that the attachment of an allonge will not be a fact issue for the court so long as the policies intended by the UCC—to prevent fraud and preserve chain of title—are satisfied. *Id*. ("The issue here is not how the documents were attached . . . but whether the way they were attached satisfied the policies expressed in the statute."). Since the decisions in *Estrada* and *Watson*, the UCC has relaxed the requirements for allonges. *See* Tex. Bus. & Com. Code Ann. § 3.204 (current version, enacted in 1995, states that for purpose of determining whether signature is made on instrument, "a paper affixed to the instrument is a part of the instrument."). We therefore decline to follow the holding in *Estrada*—that the manner of attachment of an allonge is always a fact issue—as it no longer reflects the current enactment of the UCC, or precedent from the supreme court.

The allonge corresponding to the note at issue specifically references the loan number, the original loan amount, the date of the note, and the borrower's last name and address. This summary-judgment evidence makes abundantly clear that the allonge belongs with the note, and raises no concerns about fraud or chain of title. There is also no summary-judgment evidence to the contrary in the record. We find no fact issue here, as the language in the allonge itself satisfies the

10

requirement it must be affixed to and part of the instrument. Tex. Bus. & Com. Code Ann. § 3.204(a).

CIT Bank conclusively established that it had standing to enforce the deed of trust and bring a breach-of-contract claim against Hood as the holder of the note and the assignee of record. Having determined CIT Bank's entitlement to enforce the deed of drust, we conclude that the trial court did not err in rendering summary judgment and need not address Hood's arguments that Property Code chapter 51 did not provide CIT Bank with legal authority to enforce the instruments at issue.[8] *See* Tex. R. App. P. 47.1. We overrule Hood's first issue.

**C.     Did CIT Bank have authority to enforce the deed of trust under the limited power of attorney from Fannie Mae?**

In his second issue, Hood asserts, for the first time on appeal, that the limited power of attorney executed by Fannie Mae in favor of CIT Bank did not grant CIT Bank the authority to pursue a breach-of-contract claim against Hood. Because we have decided CIT Bank's entitlement to enforce the deed of trust, we need not address Hood's second issue or CIT Bank's argument that Hood failed to preserve this issue for appeal. *See* Tex. R. App. P. 47.1.

**D.     Was CIT Bank permitted to take a monetary judgment against Hood by the note and deed of trust?**

In his third issue, Hood argues that the court erred in rendering summary judgment to CIT Bank because the instruments on which CIT Bank relies only allow it to obtain in-rem relief. Hood, however, did not present this argument to the

---

[8] CIT Bank argued in its summary-judgment motion that as the assignee of record it was entitled to enforce the mortgage under Property Code chapter 51. *See* Tex. Prop. Code Ann. § 51.0001(4)(C). Because Hood argues the statute applies only to nonjudicial foreclosure proceedings, he asserts that the Property Code does not support CIT Bank's breach-of-contract claim. *Id*.

trial court in his response to the summary-judgment motion. Hood correctly argues that a nonmovant to a summary-judgment motion is not required to answer or respond to the motion to contend on appeal that the grounds expressly present in the motion are insufficient as a matter of law to support summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 678. The nonmovant, however, may not raise any other issues as grounds for reversal for the first time on appeal. *Id.*; *see* Tex. R. Civ. P. 166a(c). In other words, any issues that a nonmovant contends avoid summary judgment must be expressed in a written response or answer to the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n*, 478 S.W.3d 111, 114 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Clear Creek Basin Auth.*, 589 S.W.2d at 678 ("[T]he nonmovant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement [to summary judgment].") (emphasis added).

Here, Hood seeks to avoid summary judgment by arguing that the security instruments on which CIT Bank relies do not permit it to take a monetary judgment against Hood. This argument does not challenge the legal sufficiency of the grounds presented to the trial court. He is asking to avoid summary judgment based upon a new ground, or a new legal theory, not presented below. *Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 453 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("A nonmovant may not urge on appeal any and every new ground he can think of"). Therefore, to preserve error on this issue, he was required to raise it in response to CIT Bank's summary-judgment motion, which he did not do. Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1(a). Concluding that Hood has not preserved error on his third issue, we overrule it.

12

**E.      Did the trial court err in awarding attorney's fees to CIT Bank?**

In his fourth issue, Hood argues that the trial court erred in awarding attorney's fees because the statutes CIT Bank relies upon either do not apply or the requirements of statute were not satisfied. While Hood did not present this argument to the trial court, CIT Bank's motion for summary judgment must stand on its own merits. *Clear Creek Basin Auth*., 589 S.W.2d at 678. Because Hood's challenge to the attorney's fees award is one of legal sufficiency, we address his arguments. *Holland v. Wal–Mart Stores, Inc*., 1 S.W.3d 91, 94 (Tex. 1999) ("The availability of attorney's fees under a particular statute is a question of law for the court."); *Schwartzott v. Maravilla Owners Ass'n, Inc.,* 390 S.W.3d 15, 21, n.3 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (concluding that nonmovant could complain for first time on appeal about sufficiency of evidence supporting award of reasonable and necessary attorney's fees on summary judgment, even though nonmovant did not respond to summary-judgment motion in trial court).

CIT Bank sought summary judgment solely on a breach-of-contract cause of action. In its summary-judgment motion, CIT Bank specifically cited to provisions of the deed of trust and condominium rider and based its entitlement to summary judgment on Hood's "failure to and refusal to remit insurance proceeds" as a breach of the covenants and agreements under section 3 of the deed of trust and section 12 of the condominium rider. CIT Bank requested in connection with its counterclaim reasonable and necessary attorney's fees pursuant to Civil Practice and Remedies Code chapter 38, as well as pursuant to Property Code sections 5.006 and 82.161.[9] Hood argues that CIT Bank cannot legally recover attorney's

---

[9] In its summary-judgment motion, CIT Bank also claims that recovery of its attorney's fees is permitted by the deed of trust, applicable insurance policies, condominium declarations, and condominium bylaws. However, CIT Bank did not cite to or identify any language in the foregoing documents permitting it to recover attorney's fees. Because this argument was not

fees under any of the statutes cited by CIT Bank. We first analyze CIT Bank's ability to recover fees under chapter 38.

Civil Practice and Remedies Code chapter 38 allows recovery of attorney's fees in breach-of-contract cases: "A person may recover reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001. The statute also requires that (1) the claimant must be represented by an attorney, (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party, and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. *Id.* § 38.002. "The purpose of the presentment requirement is to allow the party against whom the claim is asserted an opportunity to pay it or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney's fees." *Gibson v. Cuellar*, 440 S.W.3d 150, 157 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981) (applying predecessor statute)). Presentment is a "demand or request for payment or performance, whether written or oral." *Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 924 (Tex. App.—Houston [14th Dist.] 2014, no pet.). No particular form of presentment is required, though merely filing suit for a breach of contract, by itself, does not constitute presentment. *Id.*

Presentment must be pleaded and proved. *Id.* CIT Bank's original answer and original counterclaim pleaded for the recovery of attorney's fees, specifically under Civil Practice and Remedies Code section 38.001. However, CIT Bank did not plead presentment. In the absence of a special exception pointing out the lack

---

expressly presented to the trial court, we do not consider whether the deed of trust, applicable insurance policies, condominium declarations, and condominium bylaws permit CIT Bank to recover attorney's fees on its breach-of-contract counterclaim. *See* Tex. R. Civ. P. 166a(c).

of specific pleading of presentment, a pleading that gives "fair notice" that the party is seeking to recover attorney's fees under Chapter 38 is sufficient. *Gibson*, 440 S.W.3d at 156–57 (holding that pleading that did not specifically mention chapter 38 was sufficient to support award of attorney's fees in absence of special exception); *see also Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982) ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim."). Here, there is no appellate record of Hood filing special exceptions or objecting to CIT Bank's failure to plead presentment. We conclude that CIT Bank's counterclaim provided fair notice of its intent to seek attorney's fees. However CIT Bank was still required to prove presentment. *See Genender*, 451 S.W.3d at 924.

CIT Bank, however, did prove presentment. As part of its summary-judgment evidence, CIT Bank included the affidavit of Gail Balettie which states that CIT Bank demanded that Hood remit the amount of the casualty insurance proceeds erroneously paid to him, and Hood failed to do so.[10] This demand established presentment, and there is no summary-judgment evidence to the contrary in the record. *See id*. While Hood cites several cases for general principles relating to presentment under chapter 38, his arguments why chapter 38 does not apply fail because he overlooks evidence in the record demonstrating presentment. Accordingly, we conclude that CIT Bank established its entitlement to recover attorney's fees under chapter 38. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002. Because the trial court did not err in awarding attorney's fees, we need

---

[10] Balettie's affidavit does not specify when presentment occurred. "Presentment may be made either before or after filing suit, provided it is made at least 30 days before judgment." *Cano v. Nino's Paint & Body Shop*, No. 14–08–00033–CV, 2009 WL 1057622, at *7 (Tex. App.—Houston [14th Dist.] Apr. 16, 2009, no pet.) (mem. op.). Balettie's affidavit is dated August 12, 2016, and the trial court did not sign the final judgment until May 2018. Therefore, the summary-judgment evidence establishes that presentment occurred at least thirty days prior to trial court's signing of the final judgment.

not address CIT Bank's entitlement to recover attorney's fees under any of the other statutes alternatively pleaded by CIT Bank. Tex. R. App. P. 47.1. We overrule Hood's fourth issue.

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/    Charles A. Spain
        Justice

Panel consists of Justices Jewell, Spain, and Hassan.